UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT

No. 22-5153
(C.A. No. 20-1756)

AMARA EMUWA, *et al.*,                                        Appellants,

v.

UNITED STATES DEPARTMENT OF
HOMELAND SECURITY,                                        Appellee.

**APPELLEE'S COMBINED MOTION FOR SUMMARY
AFFIRMANCE AND OPPOSITION TO APPELLANTS'
<u>MOTION FOR SUMMARY REVERSAL</u>**

Appellee, the Department of Homeland Security (the "Agency"), by and
through undersigned counsel, respectfully opposes Appellants' ("Requesters'")
motion for summary reversal and moves for summary affirmance of the Honorable
Trevor N. McFadden's May 9, 2022, Memorandum Opinion and Order granting the
Agency's motion for summary judgment and denying Requesters' cross-motion for
summary judgment. R. 33, 34.[1]  Summary disposition is appropriate in this Freedom
of Information Act, 5 U.S.C. § 552 ("FOIA"), case because the "merits of this appeal
are so clear as to make summary affirmance proper." *Walker v. Washington*, 627

---

[1]      Citations to "R." followed by a number are to the District Court's docket entry
number.

F.2d 541, 545 (D.C. Cir. 1980); *accord Ambach v. Bell*, 686 F.2d 974, 979 (D.C. Cir. 1982).

In short, the District Court correctly held that the Agency properly segregated and withheld information protected by the deliberative process privilege pursuant to FOIA Exemption 5, and as upheld by this Court for the same types of records in *Abtew v. Department of Homeland Security*, 808 F.3d 895, 897 (D.C. Cir. 2015). Having reconsidered the record in this case in light of the Court's intervening decision in *Reporters Committee for Freedom of the Press v. FBI*, 3 F.4th 350 (D.C. Cir. 2021), the District Court still found the record sufficient to justify the Agency's withholdings under Exemption 5, and its analysis faithfully applies both precedents such that "no benefit will be gained from further briefing and argument of the issues presented." *Taxpayers Watchdog, Inc. v. Stanley*, 819 F.2d 294, 297-98 (D.C. Cir. 1987).[2]

## **BACKGROUND**

## I.    **THE FOIA REQUESTS**

Appellants Amara Emuwa, Michaux Lukusa, Mohammed AlQaraghuli, and Fnu Alatanhua (the "Applicants") are four former applicants for asylum. In 2020,

---

[2]    These asylum interview Assessments are currently the same type of records at issue in *Gatore v. Department of Homeland Security*, No. 21-5148 (D.C. Cir.), where oral argument is scheduled for November 7, 2022. Unlike the Requesters here, the *Gatore* Appellants do not challenge how USCIS processed their Assessments.

Appellant Louise Trauma Center, LLC ("Louise Trauma") submitted four FOIA requests on behalf of the Applicants to U.S. Citizenship and Immigration Services ("USCIS"), a component of the Agency, which sought documents known as "Assessments to Refer" ("Assessments").    R.14-2 ¶¶ 12-16.

Assessments are a crucial part of the process by which USCIS adjudicates asylum applications.  R.30-1 ¶ 9 (Decl. of Cynthia Munita); *see Abtew v. Dep't of Homeland Sec.*, 808 F.3d 895, 898-99 (D.C. Cir. 2015).  USCIS asylum officers prepare Assessments for their supervisors following interviews with asylum seekers. R.30-1, Munita Decl. ¶ 9.  These records reflect the officers' candid impressions, opinions, and analyses of the evidence and explain the bases for their initial recommendations that the applications be denied and that the applicants be referred to immigration court for removal proceedings. *Id.* The Assessments were then reviewed by the asylum officers' supervisors, who in turn made the ultimate decision on the asylum applications. *See id.* ¶ 10.

In response to each FOIA request for all records about the Applicants, the Agency released hundreds of responsive pages, including each Applicant's Assessment, and withheld certain information pursuant to FOIA Exemptions 3, 5, 6, 7(C), and 7(E). *See* R.14-1.  As to the Assessments, the Agency released the factual narrative from each document, but it withheld the sections containing the asylum officers' analyses. *See* R.16-1 ¶¶ 1-4.  An administrative appeal was taken with

respect to each of the Agency's determinations of the FOIA requests, except for the request pertaining to AlQaraghuli.  R.14-2 ¶¶ 12-15.  For Emuwa, Lukusa, and Alatanhua, the Agency released more pages upon appeal, but it otherwise upheld its determinations.  R.14-2 ¶¶ 12-13, 15.

## II.    THE PRESENT LITIGATION

Applicants and Louise Trauma filed a Complaint raising six causes of action. *See* R.1.  Counts 1-4 of the Complaint sought full disclosure of the Assessments pertaining to the Applicants.  Count 5 alleged that the Agency "negligently trained its processors," and Count 6 challenged the Agency's alleged policies and practices of processing Assessments violate FOIA.  The parties cross-moved for summary judgment, and on June 3, 2021, the district court granted summary judgment in favor of the Agency on all claims and denied summary judgment to Appellants.  *See* R.23, R.24.  With respect to the Assessments, the District Court held that the Agency had properly withheld the deliberative portions of the Assessments pursuant to Exemption 5 and the deliberative process privilege.  *See* R.23.

An appeal followed (No. 21-5131), and one month later this Court decided *Reporters Committee*, 3 F.4th at 350, and addressed FOIA's foreseeable harm requirement.  By consent of the parties, the case was then remanded for further proceedings in light of that decision.  *See* R.27.  On remand, with the benefit of the parties' supplemental briefs (R.30, R.31, R.32), the district court again granted

4

summary judgment to the Agency, concluding that its showing of foreseeable harm from release of these Assessments satisfied its burden.  *See* R.33, R.34.  This second appeal followed.

Appellants identified six putative issues for appeal.  *See* Statement of Issues to be Raised by Appellants.  These issues are addressed below, together with the arguments for summary reversal.

## <u>ARGUMENT</u>

This Court should deny the motion for summary reversal and grant summary affirmance because the record amply demonstrates that the Agency satisfied its FOIA obligations.

## I.     THE AGENCY PROPERLY WITHHELD INTRA-AGENCY DELIBERATIONS UNDER FOIA EXEMPTION 5.

To begin, and consistent with *Abtew*, Appellants do not challenge that the deliberative process privilege applies to the Assessments.  Rather, the controversy here is about the scope of that privilege.  *See* Statement of Issues to be Raised by Appellants; *Abtew*, 808 F.3d at 898-99 (holding that Assessments are protected from disclosure under Exemption 5 and the deliberative process privilege).  Appellants challenge the adequacy of the Agency's showing of foreseeable harm, and their arguments on that score appear to come in three flavors.  First, they attempt to suggest that, substantively, the Agency's declaration did not meet the threshold for showing foreseeable harm.  Second, they argue that, even if the declaration did

contain the substance necessary for finding foreseeable harm, the declaration should nevertheless be disregarded. Third, Appellants argue that the information should be released for reasons of public policy. Appellants' myriad arguments lack merit.

## A.     The Agency Sufficiently Showed Foreseeable Harm.

Under the FOIA Improvement Act, an agency is permitted to withhold information pursuant to a valid FOIA exemption if "(I) the agency reasonably foresees that disclosure would harm an interest protected by [a FOIA] exemption; or (II) disclosure is prohibited by law[.]" 5 U.S.C. § 552(a)(8)(A). Relevant here, the deliberative process privilege "is rooted in 'the obvious realization that officials will not communicate candidly among themselves if each remark is a potential item of discovery and front page news.'" *Fish & Wildlife Serv. v. Sierra Club, Inc.*, 141 S. Ct. 777, 785 (2021) (quoting *Dep't of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8-9 (2001)). Appellants argue that the Agency's declarant has not adequately shown she considered the "age, content, and character" of the Assessments and suggest that she offers only boilerplate explanation of the harm that would occur should the withheld information in this case be disclosed. Appellants' Mot. at 10-11. These arguments are unfounded.

As the Agency's declarant explained, Assessments are a "crucial part of the process by which USCIS adjudicates asylum applications," and in this case represented the asylum officers' initial recommendations to their supervisors "that

6

the asylum applications be denied and that the applicants be referred to immigration court for removal proceedings." R.30-1 ¶ 9. "In each case, the withheld information contains the [asylum] officers' specific rationale for determining whether certain facts have been established or eligibility standards met," which "includes the reasons for crediting or discrediting the veracity of the applicants' statements and their assessments of whether the evidence submitted by the applicant is internally consistent and/or consistent with other evidence or information known to the asylum officer." *Id.* ¶ 13.

The proper adjudication of asylum applications requires asylum officers be candid in their assessments of the evidence and eligibility criteria so that supervising officials can render ultimate determinations. *Id.* ¶ 11. Asylum officials reasonably expect that their deliberations and initial recommendations will be closely held and not publicly divulged, which is a key element in their candor. *See id.* The Agency's declarant further explained that, here, "[r]evealing the specific pre-decisional deliberations withheld from the Assessments in this case would interfere with USCIS's ability to make sound judgments on asylum applications" as it "would cause asylum officers to no longer feel free to discuss their evaluations of evidence or their analysis of the asylum eligibility criteria in an open and frank manner." *Id.* ¶ 14. Indeed, rather than "focusing on providing cogent analysis, recommendations, and guidance, asylum officers would temper their discussions with the knowledge

7

that their views and characterizations would be made public." *Id.* And "[b]ecause candid evaluation by asylum officers is so important and necessary to the full and proper analysis and fair consideration of these asylum requests on the merits, disclosure of the withheld information would seriously impair USCIS's mission in adjudicating those petitions." *Id.* "Asylum adjudications are at their best when officers are able to focus on the substance of the information they are providing and not on whether their initial analyses, impressions, and recommendations may at some point be made publicly available." *Id.*

She explained further that "revealing the internal deliberations and analysis" of the officers "would provide bad actors with information that would allow them to tailor asylum applications and testimony in a favorable, but fraudulent, manner." *Id.* ¶ 15. Indeed, "revealing the kinds of matters and information that the asylum officers considered in the Assessments for purposes of evaluating the applicants' credibility or used to determine whether certain facts or criteria had been established would allow bad actors to better fabricate evidence or testimony so that they might be granted asylum under false pretenses." *Id.* "Tailoring an application to tip an asylum officer's decision" is a form of fraud, a problem which USCIS has fought to curb since the release of a report from the U.S. Government Accountability Office, which noted a steep increase in asylum claims made and the agency's limited capacities to detect asylum fraud. *See* GAO-16-50, *ASYLUM: Additional Actions*

8

*Needed to Assess and Address Fraud Risk* (2015), *available at* https://www.gao.gov/assets/680/673941.pdf.   Thus, disclosure of this information, which could be used by bad actors for fraudulent purposes, "would further stifle the free flow of information between asylum officers and their supervisors as this would provide further reason to be less forthcoming in their assessments and recommendations." R.30-1 ¶ 15.

Thus, contrary to Appellants' argument, the Agency's declarant did not "merely repeat[] the generic rationale for the deliberative process privilege." Appellants' Mot. at 11.   Rather, the Agency made "a focused and concrete demonstration of why disclosure of the particular type of material at issue will, in the specific context of the agency action at issue, actually impede those same deliberations going forward." *Reps. Comm.*, 3 F.4th at 370.   That the description and context are familiar from other FOIA cases involving Assessments does not render that information "generic," and the record in this case supplies all that is required to establish foreseeable harm that would flow from public disclosure of the information being withheld, and therefore this Court should summarily affirm the district court's ruling. *See Machado Amadis v. Dep't of State*, 971 F.3d 364, 371 (D.C. Cir. 2020) (holding agency demonstrated foreseeable harm where "[the agency's] affidavit adequately explained that full disclosure of the Blitz Forms would discourage line attorneys from 'candidly discuss[ing] their ideas, strategies,

9

and recommendations,' thus impairing 'the forthright internal discussions necessary for efficient and proper adjudication of administrative appeals.'"); *Reps. Comm.*, 3 F.4th at 371 (reaffirming that redactions in *Machado Amadis* were justified because "the government directly articulated a link between the specified harm and the specific information contained in the material withheld" (cleaned up)).

> ### 1. Appellants Mistakenly Suggest that the District Court Relied on Fraud as The Relevant "Foreseeable Harm"—It Was Not.

Appellants' second issue for appeal is whether the District Court erred by "suggesting that 'enabling fraud' is an interest protected by Exemption 5." *See* Appellants' Statement of Issues. Appellants argue that preventing fraud is not the kind of harm that the deliberative process privilege was meant to prevent and, therefore, that sort of harm cannot be the basis for withholding information.[3] *See* Appellants' Mot. at 14-15. This argument is a red herring.

The District Court did not, in fact, suggest that protection against fraud was an interest protected by the deliberative process privilege. Indeed, the only interest

---

[3] Appellants also argue that the Agency's declaration did not adequately explain how the release of information might lead to fraud. But the district court correctly rejected this argument. Indeed, the Agency explained this quite plainly, stating that "revealing the kinds of matters and information that the asylum officers considered in the Assessments for purposes of evaluating the applicants' credibility or used to determine whether certain facts or criteria had been established would allow bad actors to better fabricate evidence or testimony so that they might be granted asylum under false pretenses." R.30-1 ¶ 15.

10

that the District Court relied upon concerned safeguarding candor in internal agency deliberative communications; any connection to combatting immigration fraud is derivative. And the District Court expressly noted that the Agency's "discussion of the need for candid evaluations . . . is enough to carry the agency's burden without any reference to fraud." Memo. Op. at 7 (citing R.30-1 ¶ 14).

But even setting that aside, Appellants' argument is misguided because, while the Agency's declaration does mention fraud, the Agency "expressly tied its fraud concerns to candor inside the agency." Memo. Op. at 7. As the Agency explained, asylum officers will "be less forthcoming in their assessments and recommendations" if they know that bad actors could use those recommendations for fraudulent purposes. R.30-1 ¶ 15. Thus, as the District Court correctly observed, the Agency mentions fraud "only because the possibility of fraud would dissuade full and fair deliberation." Memo. Op. at 7. Properly viewed, the Agency's concerns about fraud are part of its explanation of why public disclosure would have a chilling effect on candid analysis and advice provided to decision-makers in Assessments— which is precisely what the deliberative process privilege is meant to prevent. *See Machado Amadis*, 971 F.3d at 371.

11

**2.     The Agency's Foreseeable-Harm Showing for the Sources of the Information in Analysis Sections Also Satisfies the Legal Standard.**

Appellants' third issue for appeal challenges whether the Agency adequately demonstrated foreseeable harm associated with the release of "sources" discussed in the Assessments.  *See* Appellants' Statement of Issues.  But as the District Court correctly observed, the Agency "has adequately explained what harm would result from disclosure of an asylum officer's 'analyses, impressions, and recommendations' of a particular applicant" and because "[c]ited sources are part of that analysis, [ ] [the Agency's] adequate assertion of harm for the documents also applies to the sources cited within."  Memo Op. at 9 (quoting R.30-1 ¶ 14).  Indeed, as noted above, the declarant explained that "revealing the kinds of matters and information that the asylum officers considered in the Assessments for purposes of evaluating the applicants' credibility or used to determine whether certain facts or criteria had been established would allow bad actors to better fabricate evidence or testimony so that they might be granted asylum under false pretenses" and that releasing this information would therefore cause asylum officers to be "less forthcoming in their assessments and recommendations."  R.30-1 ¶ 15.

12

### 3.    Disclosure of Information in Other Asylum Documents Does Not Undermine the Reasonably Foreseeable Harm from Disclosure of Different Information Now Withheld in the Assessments

Appellants also argue that there can be no harm in releasing the Assessments in full because the Agency releases other, different asylum documents—specifically, records of determination, notices of intent to deny, and notices of intent to terminate. Appellants' Mot. at 12-14. Similarly, Appellants argued below that the Agency "routinely released entire [A]ssessments to FOIA requesters from 1998-2005," but later changed this policy.[4] R.20 at 3. But "an agency does not forfeit a FOIA exemption simply by releasing similar documents in other contexts." *Abtew*, 808 F.3d at 900 (citing *Army Times Publ'g Co. v. Dep't of Air Force*, 998 F.2d 1067, 1071 (D.C. Cir. 1993)). Indeed, in *Abtew*, this Court held that an Assessment could still be withheld under FOIA despite the non-public use of other Assessments in other litigation. *Abtew*, 808 F.3d at 900. As the Court explained, a forfeiture rule in which an agency would waive the deliberative process privilege for an entire class of documents merely because it voluntarily released one document of that type "would encourage agencies to voluntarily release *fewer* documents, a result in tension with FOIA's broad purposes." *Id.* (emphasis in original).

---

[4]    Although this argument is not raised in Appellants' Motion, it appears that they may intend to raise this argument in this appeal, as their Statement of Issues asks whether "the District Court err[ed] by ignoring inconsistency and unexplained change in practice." *See* Appellants' Statement of Issues.

13

**B.**    **The District Court Properly Relied Upon the Agency's Affidavit in Granting Summary Judgment to the Agency.**

Appellants also argue that the Agency's declaration should be disregarded. It is well established, however, that "summary judgment on the basis of [] agency affidavits is warranted if the affidavits describe the documents and the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith." *Mil. Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981). Declarations in FOIA cases are governed by some special rules that Appellants misunderstand, and summary judgment was appropriate on the existing record.

**1.**    **The Agency's Declarant Was Competent to Testify About the Subjects in Her Affidavit.**

First, Appellants contend that the Agency's declarant relied too heavily on hearsay and that she lacks the requisite personal knowledge. *See* Appellants' Mot. at 16-17. But in this Circuit, testimony based on information obtained during an agency declarant's official duties or from review of agency records is routinely considered when evaluating an agency's invocation of FOIA exemptions. *See, e.g., Londrigan v. FBI*, 670 F.2d 1164, 1174 (D.C. Cir. 1981) (explaining that an agent properly stated in his affidavit that "one of the sources whose identity was withheld by the FBI had specifically requested confidentiality" because that information was

14

contained in a record the agent reviewed, even though the agent did not independently verify that the source had actually requested confidentiality). This includes information that may have been relayed to them by other agency employees. *See DiBacco v. Dep't of Army*, 926 F.3d 827, 833 (D.C. Cir. 2019) ("relayed to [the declarant] by her subordinates."); *Weisberg v. Dep't of Just.*, 705 F.2d 1344, 1358 (D.C. Cir. 1983) (approving of testimony because declarant "consulted with his colleagues who had personal knowledge" of the relevant aspects of the search).

For example, in *Machado Amadis*, 971 F.3d at 371, it was sufficient for the declarant to describe the foreseeable harm that would result from the release of withheld information (*i.e.* discouraging candor among Administrative Appeals Staff attorneys) based on her "personal knowledge, as well as on information acquired by [her] in the course of performing [her] official duties." Joint App'x at 262, 272 [Document #1799865], *Machado Amadis v. Dep't of State*, No. 19-5088 (D.C. Cir); *Machado Amadis*, 971 F.3d at 371 (finding declaration adequately established foreseeable harm). The declaration in this case is substantially similar. *Compare id*. *with* R.30-1 ¶ 4 ("The Statements contained in this supplemental declaration are based on my personal knowledge, my review of relevant documents kept by USCIS in the course of ordinary business, and upon information provided to me by other

USCIS employees in the course of my official duties.").  Therefore, the declarant's statements should be treated as competent on the subjects in her declaration.

> **2.**     **Appellants Failed to Proffer Evidence Contradicting Asylum Officers' Reasonable Expectation That Their Analyses Will Not Be Publicly Divulged.**

Next, Appellants attempt to refute the notion that Asylum officers reasonably believe that their analyses reflected in the Assessments will be maintained within USCIS and not publicly divulged.  *See* Appellants' Mot. at 11-12.  But they fail to proffer evidence to create a genuine issue of material fact.

For example, Appellants did not point to evidence demonstrating that USCIS freely discloses the analyses to the public.  Indeed, quite the opposite.  Although they claimed that the Agency used to release Assessments in full between 1998-2005, Appellants also acknowledge that this practice has since ceased more than a decade before they requested Assessments.  *See* R.1 ¶¶ 96-98; R.18-1 at 5.  And the fact that the Affirmative Asylum Procedures Manual states that an Assessment "may be disclosed" to an applicant in response to a FOIA request, Appellants' Mot. at 12, does not mean that this is a common occurrence or that all information in an Assessment would be disclosed.  Indeed, even here, the Agency disclosed the Assessments in this case to Appellants and withheld only the deliberative portions of the documents.

16

3.     **The District Court Did Not Rely on the Portion of the Agency's Declaration Containing an Inadvertent Error, and Reliance on the Remainder of the Declaration Is Reasonable**

The final issue identified by Appellants is whether the District Court erred in crediting the Agency's declaration notwithstanding part of one sentence erroneously stating that Assessments contain the deliberations of both the asylum officer (which is correct) and his or her supervisor (which is generally not the case).[5]  *See* R.30-1 ¶ 15 ("Moreover, revealing the internal deliberations and analysis of USCIS asylum and supervisory asylum officers[.]").  It is well established from *Abtew*, however, that the deliberative process privilege applies to the asylum officers' impressions and analysis, and FOIA declarations are afforded a presumption of good faith, which is not rebutted merely by reference to "trivial matters, such as typographical errors" in those documents.  *SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1200, 1202 (D.C. Cir. 1991).  Here, the declaration was prepared and submitted in good faith, sworn and signed by the declarant, and, while it regrettably does contain an error in draftsmanship, it is not the kind of error that warrants wholesale disregard of her

---

[5]     In Appellants' Statement of Issues, Appellants' ask whether "the District Court err[ed] by declaring an inconsistency in an agency declaration was a 'typographical' error, especially since the [A]gency did not make that argument." But, in fact, the Agency did argue below that the error was inadvertent, *see* R.32 at 2 n.1, and Appellants now appear to acknowledge this fact, *see* Appellants' Mot. at 18 (the Agency "suggests, however, that when Ms. Munita refers to supervisory asylum officers, this is a typographical error").

17

sworn testimony.  Indeed, the remainder of the declaration makes clear that the Assessments at issue were drafted only by the Asylum officers.  *See* R.30-1 ¶¶ 9-11.

### C.    Appellants' Public Policy Arguments are Inapposite.

Appellants conclude their motion for summary reversal by urging that "[i]t is a good thing to reveal sources" relied upon in the Assessments and that other information should be revealed because it is also "a good thing to see if asylum officers are following their instructions."  Appellants' Mot. at 22-23.  Appellants urge further that Assessments should be released in full because they may be used against asylum applicants in Immigration Court.[6] *Id.* at 2.  But these arguments miss the point that Congress is the body responsible for making such policy decisions, and Congress struck the balance between disclosure and non-disclosure under the FOIA.  Thus, when an agency sufficiently establishes the applicability of an exemption, that is the end of the inquiry—the proponent of disclosure is not free to "bolster the case for disclosure by claiming an additional public benefit."  *Pub. Citizen Health Research Grp. v. FDA*, 185 F.3d 898, 904 (D.C. Cir. 1999).

---

[6]    Notably, however, the procedural rules that govern removal proceedings before immigration court afford noncitizens "a reasonable opportunity to examine the evidence against [them]." 8 U.S.C. § 1229a(b)(4)(B).  Thus, if a particular Assessment is to be used in any particular asylum case, those affected individuals will have an opportunity to review the information. But FOIA is not the appropriate mechanism through which to seek this information.  *See Abtew*, 808 F.3d at 900 (holding that Assessment was properly withheld under Exemption 5 and noting that "this is not the time and place to raise" claim to Assessment pursuant to rules governing proceedings before immigration court).

18

## II.    SUMMARY REVERSAL IS UNWARRANTED

Appellants' motion fails to carry the heavy burden of showing such clear and prejudicial error that it impacted the outcome of the case such that summary reversal is warranted. *See Taxpayers Watchdog*, 819 F.2d at 297. This case largely represents an application of *Abtew*, and the proceedings below were ordinary for FOIA litigation.

## CONCLUSION

The District Court correctly granted the Agency's motion for summary judgment and denied Plaintiffs' request for summary judgment. The District Court's decision was so clearly correct that it should be summarily affirmed, and Appellants' motion for summary reversal should be denied.

Dated:  September 21, 2022              MATTHEW M. GRAVES
                                        United States Attorney

                                        R. CRAIG LAWRENCE
                                        Assistant United States Attorney

                                By:     */s/ Derek S. Hammond*
                                        DEREK S. HAMMOND
                                        Assistant United States Attorney
                                        601 D Street, N.W.
                                        Washington, D.C. 20530
                                        Tel: (202) 252-2511
                                        E-mail: Derek.Hammond@usdoj.gov

                                        *Attorneys for Appellee*

19

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on this 21st day of September, 2022, the Appellee's

Combined Motion For Summary Affirmance And Opposition To Appellants'

Motion For Summary Reversal was served on Appellant's counsel through the

Court's ECF system.

<div style="margin-left:40%">

*/s/ Derek S. Hammond*
DEREK S. HAMMOND
Assistant United States Attorney
601 D Street, N.W.
Washington, D.C. 20530
Tel: (202) 252-2511
E-mail: Derek.Hammond@usdoj.gov

</div>

## <u>CERTIFICATE OF COMPLIANCE</u>
**(Circuit Rule 27)**

I HEREBY CERTIFY  that the foregoing Combined Motion For Summary

Affirmance And Opposition To Appellants' Motion For Summary Reversal was

prepared using a 14-point Times New Roman font and contains 4,183 words as

counted by counsel's word processing software (Microsoft Word 2016).

<div style="text-align: right;">

*/s/ Derek S. Hammond*
DEREK S. HAMMOND
Assistant United States Attorney

</div>