UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT

No. 22-5153
(C.A. No. 20-1756)

AMARA EMUWA, *et al.*,                                                                Appellants,

v.

UNITED STATES DEPARTMENT OF
HOMELAND SECURITY,                                                                    Appellee.

### APPELLEE'S REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY AFFIRMANCE

In its Motion for Summary Affirmance, Appellee Department of Homeland Security (the "Agency") showed that the Agency properly segregated and withheld information protected by the deliberative process privilege pursuant to Exemption 5 of the Freedom of Information Act, 5 U.S.C. § 552(b)(5). Appellants' response ("Reply") provides no basis to conclude otherwise, and each of Appellant's arguments is addressed below.

A.  **The Agency Sufficiently Demonstrated Foreseeable Harm.**

The Agency has shown why the disclosure of the information contained in the four Assessments would result in foreseeable harm and has provided, not just boilerplate assertions, but specific explanations. *See* Appellee's Mot. at 6-10. Appellants' arguments to the contrary lack merit.

First, Appellants argue that the Agency's declarant did not "discuss each assessment individually." Appellants' Reply at 12-13. But this Court has long made clear that agencies need not engage in "a sort of phony individualization (meaningless variations of language at each invocation of a specific exemption)" when making exemption claims. *Keys v. Dep't of Just.*, 830 F.2d 337, 349 (D.C. Cir. 1987). Indeed, "[n]o rule of law precludes [an agency] from treating common documents commonly." *Jud. Watch, Inc. v. FDA*, 449 F.3d 141, 147 (D.C. Cir. 2006). Where the reasons for non-disclosure "are identical for several documents," the agency may provide "a single" justification, "accompanied by identifying references to the documents . . . at issue." *King v. Dep't of Just.*, 830 F.2d 210, 224 (D.C. Cir. 1987). Thus, the fact that the Agency's declarant provided a single, unified justification for withholding the deliberative information from each of the four Assessments is not a basis for finding the record inadequate for summary judgment.

Appellants also argue that the declarant's purported "vagueness and lack of detail distinguish this case from *Amadis v. Dep't of State*, 971 F.3d 364 (D.C. Cir. 2020)." Appellants' Reply at 13. But the declaration in this case (R.30-1) is substantially similar to the declaration that this Court held was sufficient to establish foreseeable harm in that case. *See* Appellee's Mot. at 6-10. Apart from their conclusory assertions of "vagueness and lack of detail," Appellants make no

meaningful effort to show that the declaration here failed to focus on the information at issue or demonstrate the precise damage that would result to agency operations.

Appellants next argue that the Agency's showing of foreseeable harm is lacking because the Agency's Declarant "does not claim the four individual Plaintiffs are 'high profile.'" Appellants' Reply at 10-12. This is incorrect. While the fact that a document may or may not concern a "high-profile" matter may be relevant to the inquiry about foreseeable harm, it is hardly dispositive. For example, in *Machado Amadis*, this Court held that the agency adequately demonstrated foreseeable harm associated with the disclosure of withheld information from so-called "Blitz Forms," which are forms that the agency used to adjudicate FOIA appeals. *Machado Amadis*, 971 F.3d at 370. In that case, the agency produced the Blitz Forms for the requester's prior appeals, "but it redacted the fields for recommendations, discussion, and search notes." *Id.* There was no claim that the requester's appeals or that the Blitz Forms more generally were "high profile," and yet this Court nevertheless found that the agency had sufficiently demonstrated foreseeable harm because it "adequately explained that full disclosure of the Blitz Forms would discourage line attorneys from 'candidly discuss[ing] their ideas, strategies, and recommendations,' thus impairing 'the forthright internal discussions necessary for efficient and proper adjudication of administrative appeals.'" *Id.* at

3

371. That is all that is required—and that is precisely what the Agency demonstrated here.[1]

### 1. The District Court Did Not Rely on Fraud as The Relevant "Foreseeable Harm."

Appellants fault the District Court for "suggesting that 'enabling fraud' is an interest protected by Exemption 5." *See* Appellants' Statement of Issues; Appellants' Reply at 21-23 Yet, Appellants continue to ignore that the Agency's concerns about fraud in asylum proceedings are part of its explanation of why public disclosure would have a chilling effect on candid analysis and advice provided to decision-makers in Assessments, *see* R.30-1 ¶ 15—which is precisely what the deliberative process privilege is meant to prevent, *see Machado Amadis*, 971 F.3d at 371. And that is also exactly how the District Court understood this evidence. *See* Memo. Op. at 7 (explaining that Agency's declaration mentions fraud "only because the possibility of fraud would dissuade full and fair deliberation"). Thus, Appellants' contention that the District Court itself manufactured fraud prevention as an interest protected by Exemption 5 is contrary to the record.

Appellants also argue that the Agency's declarant "does not explain why fear of future fraud would cause an officer to be less candid in the future." Appellants'

---

[1] Similarly, Appellants' argument that the declarant "does not claim the officers will suffer ridicule or reprisal . . . does not mention the danger of premature disclosure . . . [and] does not mention the danger of misleading the public," Appellants' Reply at 13, is inapposite.

4

Reply at 14. This is puzzling because the Agency's declarant in this case explained that "revealing the internal deliberations and analysis" of the officers "would provide bad actors with information that would allow them to tailor asylum applications and testimony in a favorable, but fraudulent, manner." R.30-1 ¶ 15. Specifically, "revealing the kinds of matters and information that the asylum officers considered in the Assessments for purposes of evaluating the applicants' credibility or used to determine whether certain facts or criteria had been established would allow bad actors to better fabricate evidence or testimony so that they might be granted asylum under false pretenses." *Id.* Thus, disclosure of this information "would further stifle the free flow of information between asylum officers and their supervisors as this would provide further reason to be less forthcoming in their assessments and recommendations." *Id.*

Appellants attempt to casually dismiss this reasonably detailed evidence as "mere speculation and *ipse dixit*." [2] Appellants' Reply at 15. But, as the Agency has already explained, these were topics upon which the declarant was competent to testify, *see* Appellee's Mot. at 14-15, and that testimony is entitled to a presumption

---

[2]　Appellants claim that "[c]ourts have looked askance at claims of future harm, when there is no evidence" and points to *Pavement Coatings Technology Council v. U.S. Geological Survey*, 995 F.3d 1014 (D.C. Cir. 2021), as an example. But there, the agency affidavits "contain[ed] no explicit statement that disclosure will harm the agency's decision-making." *Id.* at 1022. That is plainly not that case here as the Agency's declaration describes the harm that disclosure will cause to the agency's decision-making process. *See* R.30-1.

5

of good faith, *SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1200, 1202 (D.C. Cir. 1991). Appellants cannot, therefore, so easily dismiss it.

### 2. The Agency's Foreseeable-Harm Showing Encompasses Sources of the Information in Analysis Sections.

Appellants again fault the Agency's declarant because she does not specifically mention "sources" in her declaration. *See* Appellant's Reply at 9-10. But Appellants ignore that "sources" are part of the "analyses, impressions, and recommendations," the release of which the Agency has sufficiently demonstrated would result in foreseeable harm. Memo Op. at 9 (quoting R.30-1 ¶ 14). Appellants offer no response or rationale why the Agency's broader foreseeable harm showing should not apply equally to "sources."

### 3. The Agency's Newly Promulgated Rule and Newly Issued Guidance Relating to that Rule Do Not Alter the Fact that The Agency Has Demonstrated Foreseeable Harm.

Appellants argue for the first time that this Court should view the Agency's showing of foreseeable harm in light of a rule promulgated by the Agency in May 2022 and new guidance pertaining to that rule. *See* Appellants' reply at 4-5. This is not an argument that Appellants made before the District Court, and this Court should not consider it because it is improperly raised. *See Singleton v. Wulff*, 428 U.S. 106, 120 (1976); *District of Columbia v. Air Fla., Inc.*, 750 F.2d 1077, 1084 (D.C. Cir. 1984).

6

Even if considered, Appellants' newfound argument lacks merit. Appellants point to 8 C.F.R. §§ 208.9(f), 1240.17 as well as new guidance issued by the Director of the Executive Office for Immigration Review. *See* Appellants' Reply at 4. The new regulations create "streamlined removal proceedings" before the Executive Office for Immigration Review, and the Agency must serve on the asylum applicant both the "asylum officer's *written decision*" as well as "any unclassified information considered by the asylum officer *in the written decision.*" *See* 8 C.F.R. §§ 208.9(f), 1240.17 (emphasis added). From this, Appellants argue that the entirety of the *Assessments* in this case must be disclosed, including any sources contained therein, and that the Agency will not suffer any harm. Appellants' Reply at 5. Appellants are incorrect.

First, a rule promulgated years after the creation of the documents at issue plainly could not have impacted the reasonable expectations of the Asylum Officers who drafted those documents. Furthermore, Appellants conflate the notion of the "written decision" in the new streamlined procedures with "Assessments." But Assessments are *not* the same as the "written decisions"—the written decision is "[t]he decision of an asylum officer to grant or to deny asylum or to refer an asylum application" which is "communicated in writing to the applicant," 8 C.F.R. § 208.19, whereas an "Assessment" is "merely a recommendation to a supervisor" about what the decision should be, *Abtew v. Dep't of Homeland Sec.*, 808 F.3d 895, 899 (D.C.

7

Cir. 2015). Whatever the new regulation specifies with respect to what must be disclosed as to the "written decision" is not an analogue for the "Assessments."

> **4. Disclosure of Information in Other Asylum Documents Does Not Undermine the Reasonably Foreseeable Harm from Disclosure of Different Information Now Withheld in the Assessments.**

Appellants also continue to argue that there can be no harm in releasing the Assessments in full because the Agency has released other asylum documents in the past. First, Appellants note that the Agency issues notices of intent to deny asylum applications. Appellants Reply at 2-4. They continue to ignore, however, that this Court has already rejected this kind of argument in *Abtew*, holding that "an agency does not forfeit a FOIA exemption simply by releasing similar documents in other contexts." *Abtew*, 808 F.3d at 900 (citing *Army Times Publ'g Co. v. Dep't of Air Force*, 998 F.2d 1067, 1071 (D.C. Cir. 1993)). Appellants also disregard the significant distinction between the Assessments and notices of intent to deny. Assessments are drafted and prepared as part of a deliberative document for a final decisionmaker, whereas a notice of intent to deny is drafted with the full expectation of it being handed to the asylum applicant. Thus, releasing information from an Assessment interferes with the Agency's internal deliberations, and the issuance of a notice of intent to deny does not.

Appellants also erroneously assign error to the District Court's supposed failure to consider the Agency's practice of releasing Assessments from 1998 to

8

2005, which Appellants contend undermines the Agency's current claim of foreseeable harm. Appellants' Reply at 19. But the District Court did consider this argument and rejected it. *See* R.23 at 16. The District Court explained first that, "[a]lthough an agency may waive the deliberative process privilege as to a particular document by releasing it to the public, an agency does not waive the privilege as to an entire class of documents by voluntarily releasing one document of that type." *Id.* (citation omitted). This is precisely what this Court held in *Abtew*, when the appellant there had argued that that the Agency was estopped from asserting Exemption 5 over Assessments "because it has not always invoked the deliberative process privilege for other Assessments." *Abtew*, 808 F.3d at 899.

The District Court went on to explain that Appellants' "assertion of inconsistency relies on an alleged seven-year practice from almost two decades ago" and that, "[f]or much of that time, [the Agency] did not even exist." R.23 at 16. Moreover, the Court recognized that "[t]he Government may have changed its practice for good reason—to allow asylum officers to candidly express their opinions and recommendations." *Id.* Thus, the District Court was unwilling to "punish an agency for learning from past mistakes." *Id.*

At bottom, that other documents relating to asylum have been released at some point in the past does not bind the Agency's hands for all time, nor does it otherwise demonstrate that the Agency's present showing of foreseeable harm is fallacious.

9

### B.　The District Court Properly Relied Upon the Agency's Affidavit.

Appellants challenge the propriety of relying on the Agency's declaration at all, none of these arguments have merit.

#### 1.　The Agency's Declarant Was Competent to Testify About the Subjects in Her Affidavit.

First, Appellants again argue in passing that the declarant did not have "personal knowledge." Appellants' Reply at 6. But Appellants fail to distinguish the well-settled holdings in the FOIA cases cited in the Agency's motion allowing declarants to present information gathered from others. *See* Appellee's Mot. at 14-16.

#### 2.　Appellants Failed to Proffer Evidence Contradicting Asylum Officers' Reasonable Expectation That Their Analyses Will Not Be Publicly Divulged.

In their Reply, Appellants again attempt to refute the notion that Asylum officers reasonably believe that their analyses reflected in the Assessments will be maintained within the Agency and not publicly divulged. To support that argument, however, the Opposition cites training material from *2004*. *See* Appellants' Reply at 7-8 (citing R.18-5). Such outdated material hardly disproves that Asylum officers today believe the deliberative information in their Assessments will be maintained within the Agency. This training material was created at least thirteen years before the Assessments at issue in this case. *See* R.1 ¶¶ 179, 192, 205, 210 (Assessments created between 2017 and 2019). Moreover, it is from a period

10

(1998-2005) when, according to Appellants, the Agency regularly released Assessments. But, again, that is a practice that Appellants acknowledge ceased in 2005 and this Court acknowledged in *Abtew* when upholding the application of Exemption 5. *See* R.1 ¶¶ 96-98; R.18-1 at 5; *Abtew*, 808 F.3d at 899.

### 3. The District Court Did Not Rely on the Portion of the Agency's Declaration Containing an Inadvertent Error, and Reliance on the Remainder of the Declaration Is Reasonable

Appellants once again point out that, in the Agency's declaration, part of one sentence erroneously stated that Assessments contain the deliberations of not only the Asylum officer, but also his or her supervisor. *See* Appellants' Reply at 8-9. Appellants make much of this unfortunate error in draftsmanship, yet they continue to ignore that the Declaration elsewhere makes clear that the Assessments at issue were drafted only by the Asylum officers, *see* R.30-1 ¶¶ 9-11, and the caselaw from this Court that such "trivial matters" are not sufficient to overcome the presumption of good faith that agency declarations are entitled. *SafeCard Servs.,* 926 F.2d at 1202.

### C. Appellants' Public Policy Arguments are Inapposite.

Appellants argue that public policy reasons weigh in favor of release of the deliberative material (Appellants' Reply at 19-21), without recognizing that this Court has rejected such rationales where the Agency has demonstrated the

applicability of a FOIA exemption. *See Pub. Citizen Health Rsch. Grp. v. FDA*, 185 F.3d 898, 904 (D.C. Cir. 1999).

## **CONCLUSION**

The Court should summarily affirm the judgment below.

Dated: October 5, 2022       MATTHEW M. GRAVES
                             United States Attorney

                             R. CRAIG LAWRENCE
                             Assistant United States Attorney

                By:  */s/ Derek S. Hammond*
                     DEREK S. HAMMOND
                     Assistant United States Attorney
                     601 D Street, N.W.
                     Washington, D.C. 20530
                     Tel: (202) 252-2511
                     E-mail: Derek.Hammond@usdoj.gov

                     *Attorneys for Appellee*

# CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 5th day of October, 2022, the Appellee's Reply in support of its Motion For Summary Affirmance was served on Appellant's counsel through the Court's ECF system.

>  /s/ Derek S. Hammond
> DEREK S. HAMMOND
> Assistant United States Attorney
> 601 D Street, N.W.
> Washington, D.C. 20530
> Tel: (202) 252-2511
> E-mail: Derek.Hammond@usdoj.gov

# **CERTIFICATE OF COMPLIANCE**
**(Circuit Rule 27)**

I HEREBY CERTIFY that the foregoing Reply in Support of Motion For Summary Affirmance was prepared using a 14-point Times New Roman font and contains 2,530 words as counted by counsel's word processing software (Microsoft Word 2016).

*/s/ Derek S. Hammond*
DEREK S. HAMMOND
Assistant United States Attorney