**ORAL ARGUMENT NOT SCHEDULED**

————

UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT

————

No. 22-5153

————

AMARA EMUWA, *et al.*,                                                    Appellants,

v.

U.S. DEPARTMENT OF HOMELAND SECURITY,               Appellee.

————

# BRIEF FOR APPELLEE

————

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

————

MATTHEW M. GRAVES
*United States Attorney*

BRIAN P. HUDAK
JANE M. LYONS
*Assistant United States Attorneys*

DEREK S. HAMMOND,
*Assistant United States Attorney*
601 D Street, N.W. – Seventh Floor
Washington, D.C.  20530
(202) 252-2511
Derek.Hammond@usdoj.gov

Civ. A. No. 20-1756

## CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES

### Parties and Amici

Appellants, plaintiffs below, are Amara Emuwa, Michaux Lukusa, Mohammed AlQaraghuli, Fnu Alatanhua, and Louise Trauma Center, LLC, (together "Requesters"). Appellee, defendant below, is the U.S. Department of Homeland Security ("Agency").

### Ruling Under Review

At issue in this appeal is the Honorable Trevor N. McFadden's May 9, 2022, Memorandum Opinion and Order granting Defendant's Motion for Summary Judgment and denying Plaintiff's Cross-Motion for Summary Judgment.

### Related Cases

This case has previously been before this Court in No. 21-5131. On November 12, 2021, at the request of the parties, the Court remanded the case to district court for further consideration in light of this Court's then-recent opinion in *Reporters Committee for Freedom of the Press v. FBI*, 3 F.4th 450 (D.C. Cir. 2021). Undersigned counsel is unaware of any related cases.

## **TABLE OF CONTENTS**

CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES ............. i

TABLE OF CONTENTS........................................................................... ii

TABLE OF AUTHORITIES .................................................................. iv

GLOSSARY OF ABBREVIATIONS ................................................... viii

JURISDICTIONAL STATEMENT ........................................................1

STATEMENT OF ISSUE.......................................................................1

PERTINENT STATUTORY PROVISION..............................................1

COUNTERSTATEMENT OF THE CASE...............................................2

     I.     ASSESSMENTS TO REFER IN ASYLUM PROCEEDINGS ...........2

     II.    THE PRESENT FOIA LITIGATION ...................................4

SUMMARY OF ARGUMENT ...............................................................6

STANDARD OF REVIEW .....................................................................9

ARGUMENT ......................................................................................10

     I.     THE AGENCY DEMONSTRATED THAT RELEASE OF THE INFORMATION AT ISSUE WOULD RESULT IN FORESEEABLE HARM TO THE AGENCY'S DELIBERATIVE PROCESS. ...........10

          A.     Applicable Legal Standards .......................................10

          B.     The Agency Demonstrated Reasonably Foreseeable Harm from Release of the Deliberative Portions of the Assessments. ........13

     II.    APPELLANTS' MERITS-BASED ARGUMENTS ARE UNPERSUASIVE. ..............................................................17

          A.     The Agency's Showing of Foreseeable Harm Was Not Deficient. ...................................................................18

B.    The Agency's Explanation of Foreseeable Harm Encompasses "Sources." ...................................................................................22

C.    Releases of Other Agency Records and Information, Including Asylum-Related Ones or In the Past, Do Not Undermine The Showing of Reasonably Foreseeable Harm In This Case.........24

D.    None of the Other Material Appellants Identify Dispel the Reasonableness of Asylum Officers' Expectation that Their Analyses Will Not be Publicly Divulged Unless Specifically Adopted Into a Final Agency Action. .......................................30

III.    THE DISTRICT COURT PROPERLY RELIED UPON THE AGENCY'S DECLARATION. ...........................................................32

A.    The Agency's Declarant Was Competent to Provide Evidence on the Reasonably Foreseeable Harm Perceived By the Agency. ...................................................................................33

B.    A Trivial Error in a Portion of One Sentence, Is Not Grounds To Wholly Disregard The Agency's Declaration. ....................38

IV.    APPELLANTS' POLICY ARGUMENTS ARE INAPPOSITE. ........42

CONCLUSION .........................................................................................44

# TABLE OF AUTHORITIES

**Cases**

*Abdelfattah v. Dep't of Homeland Sec.*,
  787 F.3d 524 (D.C. Cir. 2015)....................................................9

*Abtew v. Dep't of Homeland Sec.*,
  47 F. Supp. 3d 98 (D.D.C. 2014) ........................................ 2, 3, 4

\* *Abtew v. Dep't of Homeland Sec.*,
  808 F.3d 895 (D.C. Cir. 2015)................................. 2, 3, 6, 10, 13, 16, 27, 40, 41

*ACLU v. Dep't of Just.*,
  655 F.3d 1 (D.C. Cir. 2011) .....................................................9

*Army Times Publ'g Co. v. Dep't of Air Force*,
  998 F.2d 1067 (D.C. Cir. 1993).................................................27

*Bd. of Regents of Univ. of Wash. v. EPA*,
  86 F.3d 1214 (D.C. Cir. 1996)..................................................10

*Campaign Legal Ctr. v. Dep't of Just.*,
  34 F.4th 14 (D.C. Cir. 2022)...................................................10

*Campbell v. Department of Just.*,
  164 F.3d 20 (D.C. Cir. 1998)...................................................36

*Carlborg v. Dep't of Navy*,
  No. 20-5311, 2021 WL 1049467 (D.C. Cir. Mar. 8, 2021)................................22

*CIA v. Sims*,
  471 U.S. 159, (1985)............................................................25

*Ctr. for Nat'l Sec. Studies v. Dep't of Just.*,
  331 F.3d 918 (D.C. Cir. 2003) ........................................... 17, 25, 27

*Dep't of Interior v. Klamath Water Users Protective Ass'n*,
  532 U.S. 1 (2001)...............................................................10

*DiBacco v. Dep't of Army*,
  926 F.3d 827 (D.C. Cir. 2019) ........................................... 34, 36

*District of Columbia v. Air Fla., Inc.*,
    750 F.2d 1077 (D.C. Cir. 1984) ..........................................................................26

*Dudman Comms. Corp. v. Dep't of Air Force*,
    815 F.2d 1565 (D.C. Cir. 1987) ..........................................................................10

*Elliott v. Dep't of Agric.*,
    596 F.3d 842 (D.C. Cir. 2010) ............................................................................10

*Nat'l Archives & Recs. Admin. v. Favish*,
    541 U.S. 157 (2004) ............................................................................................16

*Fish & Wildlife Serv. v. Sierra Club, Inc.*,
    141 S. Ct. 777 (2021) ................................................................................... 10, 41

*Food Mktg. Inst. v. Argus Leader Media*,
    139 S. Ct. 2356 (2019) .......................................................................... 17, 29, 43

*Gatore v. Dep't of Homeland Sec.*,
    No. 21-5148, 2023 WL 2576176 (D.C. Cir. Mar. 21, 2023) ......................... 3, 40

*Hall & Assocs. v. EPA*,
    956 F.3d 621 (D.C. Cir. 2020) ............................................................................37

*Jud. Watch, Inc. v. FDA*,
    449 F.3d 141 (D.C. Cir. 2006) ............................................................................21

*Keys v. Dep't of Just.*,
    830 F.2d 337 (D.C. Cir. 1987) ............................................................................21

*King v. Dep't of Just.*,
    830 F.2d 210 (D.C. Cir. 1987) ............................................................................21

*Londrigan v. FBI*,
    670 F.2d 1164 (D.C. Cir. 1981) ................................................................... 34, 37

* *Machado Amadis v. Dep't of State*,
    971 F.3d 364 (D.C. Cir. 2020) ............................................... 11, 12, 16, 18, 35

*Mil. Audit Project v. Casey*,
    656 F.2d 724 (D.C. Cir. 1981) ............................................................................33

*Montgomery v. IRS*,
    40 F.4th 702 (D.C. Cir. 2022) ............................................................................34

*NLRB v. Sears, Roebuck & Co.*,
     421 U.S. 132 (1975) ..................................................................................41

*Potter v. District of Columbia*,
     558 F.3d 542 (D.C. Cir. 2009) ..................................................................10

*Pub. Citizen Health Rsch. Grp. v. FDA*,
     185 F.3d 898 (D.C. Cir. 1999) ..................................................................43

*\* Reporters Committee for Freedom of the Press v. FBI*,
     3 F.4th  (D.C. Cir. 2021) .............................. i, 5, 11, 12, 13, 18, 19, 20, 21, 23, 28

*SafeCard Servs., Inc. v. SEC*,
     926 F.2d 1197 (D.C. Cir. 1991) ............................................................. 39, 42

*Salazar ex rel. Salazar v. District of Columbia*,
     602 F.3d 431 (D.C. Cir. 2010) ..................................................................22

*Singleton v. Wulff*,
     428 U.S. 106 (1976) ..................................................................................26

*Weisberg v. Dep't of Just.*,
     705 F.2d 1344 (D.C. Cir. 1983) ............................................................. 34, 36

*World Wide Minerals, Ltd. v. Republic of Kazakhstan*,
     296 F.3d 1154 (D.C. Cir. 2002) ................................................................13

## Statutes

5 U.S.C. § 552 ...............................................................................................1

5 U.S.C. § 552(a)(4)(B) .................................................................................1

5 U.S.C. § 552(a)(8)(A) ........................................................................... 10, 18

8 U.S.C. § 1225 ............................................................................................24

8 U.S.C. § 1229a(b)(4)(B) .............................................................................3

28  U.S.C. § 1291 ...........................................................................................1

28 U.S.C. § 1331 ...........................................................................................1

Pub. Law 107-296 ........................................................................................26

**Rules**

Fed. R. App. P. 4(a)(1)(B) ...................................................................1

Fed. R. App. P. 32(f) ........................................................................45

Fed. R. App. P. 32(g) .......................................................................45

Fed. R. Civ. P. 56 .............................................................................33

Federal Rule of Civil Procedure 56(c)(4) .........................................33

**Regulations**

8 C.F.R. § 208.12(a) .........................................................................28

8 C.F.R. § 208.24 ..............................................................................24

8 C.F.R. § 208.30(g)(1) .....................................................................24

**Other Authorities**

59 Fed. Reg. 62,283 (Dec. 5, 1994) ..................................................28

87 Fed. Reg. 18,078, (Mar. 29, 2022) ...............................................26

## <u>GLOSSARY OF ABBREVIATIONS</u>

the Agency .................................................... U.S. Department of Homeland Security

Applicants ............................................... Appellants Emuwa, Lukusa, AlQaraghuli, and Alatanhua, collectively

FOIA ............................................................................ Freedom of Information Act

Requesters ...................... Appellants Louise Trauma Center, LLC, Emuwa, Lukusa, AlQaraghuli, and Alatanhua, collectively

USCIS .................................................... U.S. Citizenship and Immigration Services

## JURISDICTIONAL STATEMENT

The district court had jurisdiction over the Freedom of Information Act ("FOIA") claims under 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. § 1331.  On May 9, 2022, the district court re-entered a final judgment in favor of the Agency.  This Court has jurisdiction under 28  U.S.C. § 1291 because Requesters timely filed a notice of appeal on May 25, 2022.  *See* Fed. R. App. P. 4(a)(1)(B).

## STATEMENT OF ISSUE

In the opinion of Appellee, the issue is:

Whether the district court properly found that the Agency's declaration demonstrating that public release of the deliberative portions in Assessments to Refer would adversely impact candor among agency officials in the asylum process adequately established reasonably foreseeable harm within the meaning of 5 U.S.C. § 552(a)(8)(A)(i)(I) such that the Agency properly withheld them under FOIA Exemption 5.

## PERTINENT STATUTORY PROVISION

Freedom of Information Act, 5 U.S.C. § 552

(a)(8)(A) An agency shall—

> (i) withhold information under this section only if—

>> (I) the agency reasonably foresees that disclosure would harm an interest protected by an exemption described in subsection (b)[.]

·      ·     ·

(b) This section does not apply to matters that are—

.    .    .

(5) inter-agency or intra-agency memorandums or letters that would not be available by law to a party other than an agency in litigation with the agency, provided that the deliberative process privilege shall not apply to records created 25 years or more before the date on which the records were requested

## COUNTERSTATEMENT OF THE CASE

### I.    ASSESSMENTS TO REFER IN ASYLUM PROCEEDINGS

By statute, a person who is in the United States without legal status is generally subject to administrative removal proceedings and deportation. *See Abtew v. Dep't of Homeland Sec.*, 808 F.3d 895, 897 (D.C. Cir. 2015). Those fearing persecution upon returning to their home countries may apply to U.S. Citizenship and Immigration Services ("USCIS") for asylum. *See id.* Should USCIS grant an asylum application, the applicant may stay in the United States. *Id.* Should USCIS deny the application, that person may seek asylum by challenging the preliminary denial in an administrative immigration court. *Abtew v. Dep't of Homeland Sec.*, 47 F. Supp. 3d 98, 101 (D.D.C. 2014).

When a person applies for asylum with USCIS, an asylum officer first interviews the person. *Abtew*, 808 F.3d at 898. "If the asylum officer recommends denying the application and concludes that the applicant is in the United States illegally, the officer prepares a document called an Assessment to Refer, which the

officer forwards to a supervisor who determines whether to grant asylum or to direct the case to Immigration Court for removal proceedings." *Gatore v. Dep't of Homeland Sec.*, No. 21-5148, 2023 WL 2576176, at *1 (D.C. Cir. Mar. 21, 2023). That document summarizes the interview, evaluates the applicant's credibility and any legal issues the application raises, and explains why the officer believes asylum is or is not warranted. *Abtew*, 808 F.3d at 898; *see also Gatore*, 2023 WL 2576176, at *1. If the supervisory official denies asylum, USCIS provides the applicant a Referral Notice briefly explaining a basis for the denial and informing the applicant that the case has been referred to immigration court for administrative adjudication. *Id.* At no point during this preliminary part of the process does USCIS provide the applicant with the assessment itself. *See Abtew*, 47 F. Supp. 3d at 101.

The immigration court conducts a de novo hearing on asylum requests. *Abtew*, 47 F. Supp. 3d at 101. During these proceedings, the Department may, but is not required to, present the assessment or part of it as evidence. *Id.* For example, it may choose to offer into evidence an assessment that reveals material inconsistencies within an applicant's testimony, or between the application or testimony and other evidence. *Id.* at 102, 113 n.18. If the Department offers an assessment or partial assessment as evidence, it must provide the applicant a reasonable opportunity to examine the assessment. *Id.* at 101; *accord* 8 U.S.C. § 1229a(b)(4)(B). Should the immigration court deny asylum, the applicant can

- 3 -

appeal the denial to the Board of Immigration Appeals, and then to a United States Court of Appeals. *Abtew*, 47 F. Supp. 3d at 101.

## II.    THE PRESENT FOIA LITIGATION

Appellants Amara Emuwa, Michaux Lukusa, Mohammed AlQaraghuli, and Fnu Alatanhua (the "Applicants") are four non-U.S. citizens who each applied for Asylum in the United States. Between 2017 and 2019, Asylum officers prepared Assessments to Refer (the "Assessments") for each of the Applicants. *See* A37 ¶ 180; A39-A41 ¶¶ 192, 205, 210; A309 ¶ 7. In 2020, Appellant Louise Trauma Center, LLC (together with the Applicants, the "Requesters") submitted four FOIA requests on behalf of the Applicants to USCIS, a component of the Agency, which sought, among other things, the Applicants' Assessments.    A154-A156 at ¶¶ 12-16.

In response to each FOIA request, the Agency released hundreds of responsive pages, including each Applicant's Assessment, and withheld certain information pursuant to FOIA Exemptions 3, 5, 6, 7(C), and 7(E). *See* A120-A149. As to the Assessments, the Agency released the factual narrative from each document, but it withheld the sections containing the asylum officers' analyses. *See* R.18-2 ¶¶ 1-4. An administrative appeal was taken with respect to each of the Agency's determinations of the FOIA requests, except for the request pertaining to AlQaraghuli. A154-156 at ¶¶ 12-15. For Emuwa, Lukusa, and Alatanhua, the

Agency released more pages upon appeal, but it otherwise upheld its determinations. A154-156 at ¶¶ 12-13, 15.

The Requesters thereafter filed a Complaint raising six causes of action. *See generally* A7-A53. Counts 1-4 of the Complaint sought full disclosure of the Assessments pertaining to the Applicants. *See* A42-A43. Count 5 alleged that the Agency "negligently trained its processors," *see* A44-45, and Count 6 challenged the Agency's alleged policies and practices of "not releasing entire Assessments," *see* A45-A46; A51-A52 ¶ 309; A292-A293. The parties cross-moved for summary judgment, and on June 3, 2021, the district court granted summary judgment in favor of the Agency on all claims and denied summary judgment to Appellants. *See* A273-A295. With respect to the Assessments, the district court held that the Agency had properly withheld portions of the Assessments pursuant to Exemption 5 and the deliberative process privilege and found that the Agency had adequately shown that it reasonably segregated and withheld only exempt material for which release entails reasonably foreseeable harm. *See* A279-A292.

An appeal followed (No. 21-5131) in which Appellants challenged the district court's finding of reasonably foreseeable harm as to the deliberative materials contained in the Assessments. *See* Statement of Issues to Be Raised [Doc. #1904698], No. 21-5131 (D.C. Cir.). One month later, this Court decided *Reporters Committee for Freedom of the Press v. FBI*, 3 F.4th 450 (D.C. Cir. 2021) (hereinafter

"*Reporters Comm.*"), which addressed FOIA's foreseeable harm requirement under 5 U.S.C. § 552(a)(8)(A)(i)(I).  By consent of the parties, the case was then remanded for further proceedings in light of that decision.   *See* R.27.  On remand, with the benefit of the parties' supplemental briefs and a supplemental declaration, *see* A6, the district court again granted summary judgment to the Agency, concluding that its showing of foreseeable harm from release of these Assessments satisfied its burden.  *See* A383-A392.

This second appeal followed, and Appellants have, again, limited their appeal solely to the issue of foreseeable harm associated with limited materials withheld in the Assessments.  *See* Statement of Issues; Appellants Br.

## SUMMARY OF ARGUMENT

Requesters have abandoned on appeal all claims other than the sufficiency of the Agency's showing under Exemption 5 as to the Assessments.  Because the information withheld from the four disputed Assessments was both predecisional and deliberative, it falls within the ambit of the deliberative process privilege and Exemption 5 of FOIA.  *See Abtew*, 808 F.3d at 897.  Requesters do not dispute this or otherwise challenge the district court's finding in this regard.  Instead, they focus squarely on the issue of reasonably foreseeable harm under 5 U.S.C. § 552(a)(8)(A)(i)(I).

But, on that score, the record amply supports the district court's finding. The Agency's supporting declaration and the record as a whole provide a focused and concrete demonstration of why public disclosure of the analyses, opinions, deliberations, and recommendations contained within the Assessments will impede the Agency's ability to properly adjudicate applications for asylum because release would cause asylum officers to no longer feel free to discuss their evaluations of evidence or their analysis of the asylum eligibility criteria in an open and frank manner. Furthermore, revealing the internal deliberations and analysis of the officers would provide potential bad actors with information that would allow them to tailor asylum applications and testimony in a favorable, but fraudulent, manner, which would provide asylum officers further reason to be less forthcoming.

Appellants resist the district court's conclusion with myriad contentions, but these arguments generally fall into three categories—merits arguments, procedural arguments, and policy arguments—though none are ultimately convincing. On the merits, Appellants first contend that that the Agency's showing was simply deficient. But, as shown above and described in greater detail below, the Agency's showing of harm was particularized and on par with the kinds of showings that this Court has previously approved. Appellants also argue that at least the sources cited within the Assessments should be disclosed and that the Agency has not shown harm associated with the release of that information. They ignore, however, that the

Agency's description of harm encompasses the sources cited or discussed in the Assessments and that it applies equally to that information.

Appellants also attempt to rebut the notion that asylum officials reasonably expect that their deliberative materials will remain closely held and not publicly divulged. Appellants largely rely on their allegation that the Agency used to release Assessments in full but ceased this practice nearly two decades ago and the fact that different documents relating to the asylum process are routinely released today. Neither of these, however, support the notion that the deliberations contained within Assessments are regularly disclosed to the public *today* or otherwise undermine the reasonableness of the current expectations held by asylum officers with respect to the treatment of the deliberative information contained in Assessments. And, as this Court has already held, agencies do not forfeit their right to assert exemptions merely because they have previously released similar documents in other contexts.

Procedurally, Appellants argue that the district court was wrong to credit the agency's declaration at all. They argue that the declaration should be discarded because the declarant, in their view, lacked the requisite personal knowledge to speak on the subjects of her declaration and because she relied on hearsay. This argument is belied both by the facts, which demonstrate that the declarant relied both on her personal knowledge and from permissible sources within the agency, and the

law, which permits the sources of information relied upon in this case.  Appellants argue further that the district court should not have credited the declaration due to a minor error in one fragment of one sentence, which indisputably had no impact on the outcome of this case.  The law, however, does not countenance the wholesale disregard of declarations for containing trivial errors such as this.

Finally, Appellants level several arguments they believe support disclosure of the withheld material based purely matters of policy.  But Congress is the body responsible for weighing policy decisions and it has already struck the balance of disclosure and withholding through the framework of FOIA.  Courts are therefore to faithfully apply the FOIA as Congress has written it, without regard for the kinds of policy arguments advanced by Appellants, which are entirely divorced from FOIA's text.

In short, although many in number, Appellants' arguments fail to demonstrate that the district courts finding of foreseeable harm was erroneous.  This Court should therefore affirm.

## **STANDARD OF REVIEW**

This Court's review of the merits of summary judgment is *de novo*.  *ACLU v. Dep't of Just.*, 655 F.3d 1, 5 (D.C. Cir. 2011).  This review is limited, absent exceptional circumstances, insofar as the Court considers only arguments made in the district court and raised on appeal.  *See Abdelfattah v. Dep't of Homeland Sec.*,

787 F.3d 524, 532 (D.C. Cir. 2015); *Elliott v. Dep't of Agric.*, 596 F.3d 842, 851 (D.C. Cir. 2010); *Potter v. District of Columbia*, 558 F.3d 542, 547, 550 (D.C. Cir. 2009); *Bd. of Regents of Univ. of Wash. v. EPA*, 86 F.3d 1214, 1221 (D.C. Cir. 1996).

## ARGUMENT

I. **THE AGENCY DEMONSTRATED THAT RELEASE OF THE INFORMATION AT ISSUE WOULD RESULT IN FORESEEABLE HARM TO THE AGENCY'S DELIBERATIVE PROCESS.**

### A.    Applicable Legal Standards

Under the FOIA Improvement Act, an agency is permitted to withhold information pursuant to a valid FOIA exemption if "(I) the agency reasonably foresees that disclosure would harm an interest protected by [a FOIA] exemption; or (II) disclosure is prohibited by law[.]" 5 U.S.C. § 552(a)(8)(A). Here, the Agency withheld limited information in the Assessments pursuant to Exemption 5 and the deliberative process privilege. That privilege "is rooted in 'the obvious realization that officials will not communicate candidly among themselves if each remark is a potential item of discovery and front page news.'" *Fish & Wildlife Serv. v. Sierra Club, Inc.*, 141 S. Ct. 777, 785 (2021) (quoting *Dep't of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8-9 (2001)); *see also Campaign Legal Ctr. v. Dep't of Just.*, 34 F.4th 14, 28 (D.C. Cir. 2022); *Abtew*, 808 F.3d at 898; *Dudman Comms. Corp. v. Dep't of Air Force*, 815 F.2d 1565, 1567 (D.C. Cir. 1987) (privilege rests "most fundamentally on the belief that were agencies forced to operate in a

fishbowl . . . the frank exchange of ideas and opinions would cease and the quality of administrative decisions would consequently suffer."). Thus, to make the requisite showing under § 552(a)(8)(A) when the deliberative process privilege is the basis for withholding, agencies must provide "a focused and concrete demonstration of why disclosure of the particular type of material at issue will, in the specific context of the agency action at issue, actually impede those same deliberations going forward." *Reps. Comm.*, 3 F.4th at 370. "Naturally, this inquiry is context specific," but the requisite showing can be made on "a category-by-category basis[.]" *Id.* at 369-70. And even without a sufficient explanation from the agency, the "context and purpose" of withheld information can nevertheless support a finding of foreseeable harm. *Id.* at 372.

Two relatively recent decisions from this Court illustrate the contours of FOIA's foreseeable-harm requirement. In *Machado Amadis v. Department of State*, 971 F.3d 364 (D.C. Cir. 2020), the State Department withheld certain recommendations, discussions, and search notes about the State Department's FOIA processing pursuant to Exemption 5 and the deliberative process privilege. *Id.* at 370. There, the agency submitted a declaration stating that disclosure of the forms (which the agency termed "blitz forms") would discourage candid discussions among line attorneys, thereby hindering "the forthright internal discussions necessary for efficient and proper adjudication of administrative appeals." *Id.* at 371

(quoting agency declaration). The Court found that the agency had demonstrated the requisite foreseeable harm and rejected the plaintiff's counterargument that the agency had provided only "generalized assertions that 'could' chill deliberations." *Id.* (quoting plaintiff's brief). The Court explained that the agency had "specifically focused on the information at issue" in the forms and had "concluded that disclosure of that information 'would' chill future discussions." *Id.* (quoting agency declaration).

Subsequently, in *Reporters Committee*, 3 F.4th at 350, addressing a record about information regarding FBI agents impersonating reporters while conducting law enforcement investigations, the Court found the FBI had "failed to 'specifically focus' its foreseeable harm demonstration 'on the information at issue in the documents under review.'" *Id.* at 370 (cleaned up). Indeed, the "FBI's broad assertion of foreseeable harm from release of the records under its control was contained in just two 'umbrella paragraphs' that purported to sweepingly address 'all of the deliberative information in the case.'" *Id.* (emphasis in original). And the "assertion of harm in those umbrella paragraphs [was] wholly generalized and conclusory, just mouthing the generic rationale for the deliberative process privilege itself." *Id.* "Unlike the declaration in *Machado Amadis*, [the FBI] did not explain the particular sensitivity of the types of information at issue or the role that they play in the relevant agency decisional processes (and, therefore, whether and how their

release would harm similar deliberations in the future)." *Id.* at 372.  Nevertheless, the Court found that the "context and purpose" of certain communications made the "foreseeability of harm" manifest. *Id.*  Thus, the Court concluded that, for those documents, the record adequately established a basis for finding foreseeable harm. *Id.*

This Court has previously upheld the application of Exemption 5 and the deliberative process privilege to the non-factual portions of Assessments in *Abtew*, 808 F.3d at 898-900, so the narrow issue in this appeal, as demonstrated by the substance of Appellants' brief, is only the sufficiency of the Agency's foreseeable harm.  *See World Wide Minerals, Ltd. v. Republic of Kazakhstan*, 296 F.3d 1154, 1160 (D.C. Cir. 2002) ("As we have said many times before, a party waives its right to challenge a ruling of the district court if it fails to make that challenge in its opening brief.").

### B.   The Agency Demonstrated Reasonably Foreseeable Harm from Release of the Deliberative Portions of the Assessments.

In this case, the Agency reasonably determined that revealing the analyses, opinions, deliberations, and recommendations contained in the Assessments would result in foreseeable harm to the Agency's overall adjudication of applications for asylum.  As the Agency's declarant explained, Assessments are a "crucial part of the process by which USCIS adjudicates asylum applications," and, in this case, represented the asylum officers' initial recommendations to their supervisors "that

the asylum applications be denied and that the applicants be referred to immigration court for removal proceedings." A309-A310 ¶ 9. "In each case, the withheld information contains the [asylum] officers' specific rationale for determining whether certain facts have been established or eligibility standards met," which "includes the reasons for crediting or discrediting the veracity of the applicants' statements and their assessments of whether the evidence submitted by the applicant is internally consistent and/or consistent with other evidence or information known to the asylum officer." A311 ¶ 13.

The declarant, Ms. Munita, further explained that the appropriate adjudication of hundreds of asylum applications each year requires asylum officers be candid in their assessments of the evidence and eligibility criteria so that supervising officials can properly render the ultimate determinations. A310 ¶ 11. Asylum officials reasonably expect that their deliberations and initial recommendations will be closely held and not publicly divulged, as this Court held was proper in *Abtew*, which is a key element contributing to their candor. *See id.* In its expert judgment, based on decades of administering the asylum application process, the Agency has determined that "[r]evealing the specific pre-decisional deliberations withheld from the Assessments in this case would interfere with USCIS's ability to make sound judgments on asylum applications" as it "would cause asylum officers to no longer feel free to discuss their evaluations of evidence or their analysis of the asylum

eligibility criteria in an open and frank manner." A311 ¶ 14. Indeed, rather than "focusing on providing cogent analysis, recommendations, and guidance, asylum officers would temper their discussions with the knowledge that their views and characterizations would be made public." *Id.* And "[b]ecause candid evaluation by asylum officers is so important and necessary to the full and proper analysis and fair consideration of these asylum requests on the merits, disclosure of the withheld information would seriously impair USCIS's mission in adjudicating those petitions." *Id.* "Asylum adjudications are at their best when officers are able to focus on the substance of the information they are providing and not on whether their initial analyses, impressions, and recommendations may at some point be made publicly available." *Id.*

Moreover, the Agency's declarant also explained that "revealing the internal deliberations and analysis" of the officers "would provide bad actors with information that would allow them to tailor asylum applications and testimony in a favorable, but fraudulent, manner." A312 ¶ 15. Indeed, "revealing the kinds of matters and information that the asylum officers considered in the Assessments for purposes of evaluating the applicants' credibility or used to determine whether certain facts or criteria had been established would allow bad actors to better fabricate evidence or testimony so that they might be granted asylum under false pretenses." *Id.* "Tailoring an application to tip an asylum officer's decision" is a

form of fraud and a problem which USCIS has fought to curb since the release in 2016 of a report from the U.S. Government Accountability Office, which noted a steep increase in asylum claims made and the agency's limited capacities to detect asylum fraud.  *See* GAO-16-50, ASYLUM: Additional Actions Needed to Assess and Address Fraud Risk (2015) (available at https://www.gao.gov/assets/680/ 673941.pdf).  Thus, disclosure of the particular information Requesters seek, which could be used by bad actors for fraudulent purposes (which in no way suggests that Requesters are bad actors, but the reality is that FOIA releases to one are releases to all, *see Nat'l Archives & Recs. Admin. v. Favish*, 541 U.S. 157, 172 (2004)), "would further stifle the free flow of information between asylum officers and their supervisors as this would provide further reason to be less forthcoming in their assessments and recommendations."  A312 ¶ 15.

As the foregoing clearly shows, the Agency, like the State Department in *Machado Amadis*, has "specifically focused on 'the information at issue' and 'concluded that disclosure of that information would chill future internal discussions.'"  *Machado Amadis*, 971 F.3d at 371.  The Agency has explained the specific and heightened institutional reasons for its caution as to officers' recommendations to supervisors in a deliberative process that proceeds from there and falls in the heartland of the privilege.  *See Abtew*, 808 F.3d at 898.  Congress did not intend the foreseeable harm standard to weaken the enforcement of the

immigration laws by requiring agencies to reveal, in essence, too much of what the Agency is up to in carrying out its mission of limiting asylum grants to those with credible fears of persecution.  *See Ctr. for Nat'l Sec. Studies v. Dep't of Just.*, 331 F.3d 918, 925 (D.C. Cir. 2003) ("FOIA represents a balance struck by Congress between the public's right to know and the government's legitimate interest in keeping certain information confidential."); *cf. Food Mktg. Inst. v. Argus Leader Media*, 139 S. Ct. 2356, 2366 (2019) (all parts of the FOIA are equally applicable and to be construed *in pari materia*).  Context matters, and here there is no evidence that anything from the deliberative portions of the Assessments were ever officially adopted or incorporated into a final determination by the government in the asylum proceedings for any of the four individuals.  *Ctr. for Nat'l Sec. Studies*, 331 F.3d at 918.  And, as such, the Agency has met its burden to demonstrate reasonably foreseeable harm from disclosure.  Requesters' arguments to the contrary, discussed below, fail to show that the record warrants requiring USCIS to disclose the information the Requesters are seeking.

## II.     APPELLANTS' MERITS-BASED ARGUMENTS ARE UNPERSUASIVE.

Requesters present four main lines of arguments challenging the merits of district court's finding of foreseeable harm.  As shown below, none are persuasive.

A.     **The Agency's Showing of Foreseeable Harm Was Sufficient.**

Appellants first argue that that the district court erred because the Agency's showing was insufficient to meet its burden.  This argument oversimplifies the record or outright ignores critical parts of it.  For example, Appellants' argument that the Agency merely "repeat[s] the generic rationale for the deliberative process privilege itself" (Appellants' Br. at 22-23) is incorrect.  As demonstrated above, the Agency did much more than that.  *See generally* A309-A313 ¶¶ 7-18.  Appellants point out that the Agency's foreseeable harm analysis centers on the effect disclosure would have on candor among asylum officials, *see* Appellants Br. at 23-24, and that is precisely because that is what the Agency was required to show:  "a focused and concrete demonstration of why disclosure of the particular type of material at issue"—deliberative material in the Assessments—"will, in the specific context of the agency action at issue"—adjudication of asylum applications—"actually impede those same deliberations going forward."  *Reps. Comm.*, 3 F.4th at 370.  As such, the record here, like the record in *Machado Amadis*, amply supports the conclusion that the "agency reasonably foresees that disclosure would harm an interest protected by [a FOIA] exemption."  5 U.S.C. § 552(a)(8)(A); *see also Machado Amadis*, 971 F.3d at 371 (holding agency demonstrated foreseeable harm where "[the agency's] affidavit adequately explained that full disclosure of the Blitz Forms would discourage line attorneys from 'candidly discuss[ing] their ideas, strategies,

and recommendations,' thus impairing 'the forthright internal discussions necessary for efficient and proper adjudication of administrative appeals.'"); *Reps. Comm.*, 3 F.4th at 371 (reaffirming that redactions in *Machado Amadis* were justified because "the government directly articulated a link between the specified harm and the specific information contained in the material withheld" (cleaned up)).

Appellants further argue that the Agency did not discuss the "age, content and character" of the documents. Appellants' Br. at 32-34. As an initial matter, the records are less than twenty-five years old. Although the declarant did not specifically address the age of the Assessments in her declaration, that is of course a fact that is undisputed in the record. *See* A37 ¶ 180; A39-A41 ¶¶ 192, 205, 210 (Assessments created between 2017 and 2019). The dates of the records can be relied upon to support a finding of foreseeable harm, regardless of whether the declarant specifically discusses it. *See Reps. Comm.*, 3 F.4th at 372 (finding that "context and purpose" of particular records made "foreseeability of harm manifest," despite declarations inadequate support of foreseeable harm). And Appellants offer no reason to believe the age of these documents—which are only a few years old—somehow obviates the harm identified by the Agency.

There likewise can be no genuine dispute that the Agency's declarant did, in fact, discuss the "content and character" of the information at issue, connecting it with the harm in disclosure (A309-A313), and Appellants do not seriously contend

- 19 -

otherwise.  As noted above, the Agency's declarant specifically explained that "the withheld information contains the [asylum] officers' specific rationale for determining whether certain facts have been established or eligibility standards met," which "includes the reasons for crediting or discrediting the veracity of the applicants' statements and their assessments of whether the evidence submitted by the applicant is internally consistent and/or consistent with other evidence or information known to the asylum officer."  A311 ¶ 13.  She further explained how release of this information would adversely impact candor among asylum officials, impairing the Agency's ability to properly adjudicate asylum applications.  A311-A312 ¶¶ 14-15.

More importantly, the foreseeable harm test is not contingent upon the declaration ticking specific boxes, like stating the age of a document.  *See Reps. Comm.*, 3 F.4th at 372.  What ultimately matters most is that the agency has sufficiently demonstrated "why disclosure of the particular type of material at issue will, in the specific context of the agency action at issue, actually impede those same deliberations going forward."  *Id.* at 370.   In this case, the record amply supports the conclusion that the Agency has made that showing.

Appellants also complain that the Agency did not "discuss each assessment individually."  Appellants' Br. at 34-36.  But the standard from *Reporters Committee* is for records of "particular type . . . in the specific context" without reference to

individual instances, consistent with the more general proposition that there is "[n]o rule of law precludes [an agency] from treating common documents commonly." *Jud. Watch, Inc. v. FDA*, 449 F.3d 141, 147 (D.C. Cir. 2006). Indeed, this Court has long eschewed the "sort of phony individualization" that Appellants demand here. *Keys v. Dep't of Just.*, 830 F.2d 337, 349 (D.C. Cir. 1987). Where the reasons for non-disclosure "are identical for several documents," the agency may provide "a single" justification, "accompanied by identifying references to the documents . . . at issue." *King v. Dep't of Just.*, 830 F.2d 210, 224 (D.C. Cir. 1987). And this includes the requisite showing of foreseeable harm. *Reps. Comm.*, 3 F.4th at 369 (explaining that foreseeable harm requirement may be satisfied "on a category-by-category basis rather than a document-by-document basis"). This approach affords agencies appropriate confidence in setting policies and procedures for accomplishing their substantive missions while leaving room for the unusual cases where some reason exists for thinking an individual case presents an exception to the general rule, which is not something any of the Requesters argue here.

Here, the Agency explained that all the withheld information from the Assessments was deliberative and part of the internal process of conveying a recommendation for action on an asylum application to a supervisor; the declarations described the role that this information played in the Agency's deliberations and the reasons why the Agency reasonably foresees that public release of that information

would chill its internal deliberations.  That the Agency's declarant provided a single, unified justification for withholding the deliberative information from each of the four Assessments is not a basis for finding the record inadequate for granting summary judgment to the Agency.

## B.    The Agency's Explanation of Foreseeable Harm Encompasses "Sources."

Appellants seek the full release of the parts of the Assessments withheld under Exemption 5, but they also argue in the alternative that at least the "sources of information" that asylum officers relied upon in formulating the Assessments should be segregated and released, because, in their view, the release of sources would not result in harm to the Agency.  *See* Appellants' Br. at 41-44, 53-54; A186-189; R. 20 at 8-9; A347-A348.[1]  This argument is likewise without merit.

Appellants fault the Agency's declarant for not specifically discussing source material in her declaration.  *See* Appellants' Br. at 41-44.  But indisputably, source material is a part of the "analysis, opinions, deliberations, and recommendations"

---

[1]    In their brief (at 42-44), Appellants now appear to assert a broader challenge, claiming that the Agency has failed to make the requisite showing of segregability at all.  This was not an argument that they raised before the district court or even identified in their Statement of Issues to be Raised, *see* Doc. # 195113, and they have proffered no exceptional circumstances that would justify its consideration now for the first time on appeal.  As such, Appellants have forfeited this argument and this Court should refuse to consider it.  *See, e.g.*, *Carlborg v. Dep't of Navy*, No. 20-5311, 2021 WL 1049467, at *1 (D.C. Cir. Mar. 8, 2021) (citing *Salazar ex rel. Salazar v. District of Columbia*, 602 F.3d 431, 436-37 (D.C. Cir. 2010)).

that the Agency's declarant addressed at length and for which the Agency reasonably foresees would result in harm to the candor within the Agency's deliberations. A310-A311 ¶ 12. For example, the declarant explained that "revealing the kinds of matters and information that the asylum officers considered in the Assessments for purposes of evaluating the applicants' credibility or used to determine whether certain facts or criteria had been established would allow bad actors to better fabricate evidence or testimony so that they might be granted asylum under false pretenses" and that "[k]nowing that these details may be publicly revealed and used by potential bad actors would further stifle the free flow of information between asylum officers and their supervisors as this would provide further reason to be less forthcoming in their assessments and recommendations." A312 ¶ 15. Further, the declarant explained that the Agency had reviewed the material and specifically "considered whether any information could be segregated and released without causing a foreseeable harm to the agency and its operations," but concluded that no further segregation of meaningful information was possible. A312-A313 ¶ 17.

In short, although the Agency's declarant may not have specifically referenced "source material" by name, there can be no doubt that such material is encompassed within the material that the Agency's declarant addressed. Appellants fail to identify authority requiring the high level of granularity that they demand here in a test focused on a "type" of information rather than individual examples, *Reps.*

*Comm.*, 3 F.4th at 370, and this Court should not endorse the notion that a FOIA plaintiff can avoid summary judgment by claiming that harm was not addressed for some specific subject, despite being encompassed by the Agency's broader explanation of harm.

### C.    Releases of Other Agency Records and Information, Including Asylum-Related Ones or In the Past, Do Not Undermine the Showing of Reasonably Foreseeable Harm in This Case.

Requesters attempt to rebut the Agency's showing of foreseeable harm by noting that the Agency currently releases different asylum documents and, in the past, also released other assessments in response to FOIA requests. But the past does not undermine the Agency's current showing such that a forfeiture of Exemption 5 protection is appropriate now.

First, Appellants point out that other documents relating to the Agency's asylum procedures—specifically, records of determination, notices of intent to deny, and notices of intent to terminate[2]—are regularly disclosed to the public by the

---

[2]    Record of Determination – 8 U.S.C. § 1225; 8 C.F.R. § 208.30(g)(1) ("If an alien is found not to have a credible fear of persecution or torture, the asylum officer shall provide the alien with a written notice of decision and issue the alien a record of the credible fear determination, including copies of the asylum officer's notes, the summary of the material facts, and other materials upon which the determination was based."); Notice of Intent to Deny – 8 C.F.R. § 103.2(b)(8)(iii)-(iv); Notice of Intent to Terminate – 8 C.F.R. § 208.24 ("Prior to the termination of a grant of asylum or withholding of deportation or removal, the alien shall be given notice of intent to terminate, with the reasons therefor, at least 30 days prior to the interview specified in paragraph (a) of this section before an asylum officer.")

Agency.  Appellants fault the Agency for not discussing these documents in its declarations about the Assessments.  Appellants' Br. at 37, 39-40.  But as Appellants themselves acknowledge, these documents are fundamentally different from the parts of the Assessments being withheld under Exemption 5 in several ways, including that they are prepared with the knowledge and understanding that the information contained therein will be disseminated beyond the Agency.  *See* Appellants' Br. at 4-5.  An Assessment, by contrast, is not and, for the reasons explained by the Agency's declarant, it reasonably foresees that releasing the analyses and recommendations from the Assessments here would interfere with the Agency's internal deliberations in individual cases and would reveal patterns in the ways that the Agency analyzes applications concerning conditions in particular countries or circumstances if they became public.  *See CIA v. Sims*, 471 U.S. 159, 177, (1985) (mosaic theory); *Ctr. for Nat'l Sec. Stud. v. Dep't of Just.*, 331 F.3d 918, 930 (D.C. Cir. 2003).  Thus, the fact that the Agency releases different documents relating to its asylum procedures does not rebut the showing of harm that the Agency has demonstrated would result from the release of the most sensitive and deliberative parts of the Assessments being withheld in this case, and there is no reason why the Agency's affiant should be required to address these documents in her declaration.

FOIA allows agencies to withhold exempt information, and the foreseeable harm requirement limits the withholding to information that agencies need to

withhold to avoid reasonably foreseeable harm. Where, as here, the agencies describe the context in which the information is used sufficiently to allow courts to ascertain the harm asserted in release, nothing more should be required. Like most evidentiary burdens, the foreseeable harm standard could likely be satisfied in several ways, and there is likely little, if anything, illuminating that the Agency could say about the distinctly different records Appellants point to that would move the needle here.

Appellants also contend that the Agency used to release assessments in full between 1998 and 2005, but this too does not preclude finding foreseeable harm in releasing the portions being withheld here.[3] *See* Appellants' Br. at 40-41. The notion that the Agency and its predecessor[4] previously declined to assert Exemption 5 protection over different assessments nearly two decades ago, does not mean that there is no reasonably foreseeable harm in releasing the information in the Assessments at issue today. It does not even mean that the prior releases were

---

[3]    Appellants also argue for the first time on appeal that this Court should view the Agency's showing of foreseeable harm in light of a new rule that became effective in May 2022. *See* Appellants' Br. at 41; 87 Fed. Reg. 18,078, 18,078 (Mar. 29, 2022). Because this is never raised before the district court, this Court should not consider it because it is improperly raised. *See Singleton v. Wulff*, 428 U.S. 106, 120 (1976); *District of Columbia v. Air Fla., Inc.*, 750 F.2d 1077, 1084 (D.C. Cir. 1984).

[4]    The Agency began operations in 2003 and was formed as a result of the Homeland Security Act of 2002, which was enacted in response to the September 11, 2001, attacks. *See* Pub. Law 107-296.

harmless. All things change and agencies, like individuals, are allowed—indeed, expected—to learn from their experiences and make corrections where appropriate. Agencies are not required to proceed down a flawed path for all time. As this Court has already recognized, "an agency does not forfeit a FOIA exemption simply by releasing similar documents in other contexts." *Abtew*, 808 F.3d at 900 (citing *Army Times Publ'g Co. v. Dep't of Air Force*, 998 F.2d 1067, 1071 (D.C. Cir. 1993)); *see also Ctr. for Nat'l Sec. Stud.*, 331 F.3d at 930. "Indeed, that kind of forfeiture rule would encourage agencies to voluntarily release fewer documents, a result in tension with FOIA's broad purposes." *Abtew*, 808 F.3d at 900.

While Appellants profess that they are not claiming the Agency "forfeited" its right to assert an exemption, Appellants' Br. at 41, that is precisely the result that they are arguing for—that having previously released assessments many years ago, that the Agency can no longer claim to be harmed in the release of different assessments, despite its expert judgment about its current operations and circumstances. At bottom, the notion that some assessments may have been released at some distant point in the past does not permanently bind the Agency's hands, nor does it otherwise demonstrate that the Agency's present showing of foreseeable harm is false.[5] The insight into the Agency's current operations is also not as sharp

---

[5]    Appellants have also claimed that the Agency has a history of arbitrarily changing its policies with respect to what information it is willing to release from assessments. Appellants' Br. at 47-51. Appellants are incorrect—both in their claim

that the Agency has arbitrarily changed its policies and in their suggestion that the adequacy of an articulation of a policy change has any bearing on the issue of foreseeable harm.  First, the Agency has not arbitrarily changed its policies and Appellants make no showing that it has.  For example, Appellants argue that, under a prior version of 8 C.F.R. § 208.12(a), the Agency was required to reveal sources to the applicant, but that this changed in 1997 without explanation.  Appellants' Br. at 47-48.  This is incorrect.

In the early 1990's, 8 C.F.R. § 208.12(a) permitted asylum officers to rely on information from credible sources external to the agency when deciding asylum applications, but included a caveat that, before issuing an "adverse decision in reliance upon such material," the applicant had to be given an "an opportunity to inspect, explain, and rebut the material." 8 C.F.R. § 208.12(a) (1991).  That changed in 1995—not 1997—when the Agency sought to "streamlin[e] [] the asylum process." *See* 59 Fed. Reg. 62,283, 62,293 (Dec. 5, 1994).  The Agency thoughtfully explained that, while it "gives high priority to all efforts to improve the fairness, quality, and accuracy of decisions made by asylum officers," these procedural requirements were "not necessary to meet these goals" because "[a]pplicants who are not granted asylum by the asylum officer will have a full opportunity to present their claim to an immigration judge with all the procedural protections of a full adversarial proceeding," including "the right to examine and rebut all evidence and materials that are introduced in opposition to the asylum claim." *Id.*  Plainly, this was not a case in which the Agency arbitrarily changed a regulation and did so without explanation.

Further, this appeal does not present issues to be evaluated under the Administrative Procedure Act, where the articulated rationale for a particular agency action is often the object of close scrutiny.  Indeed, the statute of limitations bars challenges concerning changes made so long ago, and Appellants have waived their policy or practice claim.  Rather, this appeal presents a matter of FOIA, and the sole question is whether the Agency has adequately demonstrated that it reasonably foresees harm in the release of the information at issue today.  On that question, it is irrelevant whether the agency has adequately articulated its justifications for prior policies.  All that matters is whether the Agency has made "a focused and concrete demonstration of why disclosure of the particular type of material at issue will, in the specific context of the agency action at issue, actually impede those same deliberations going forward." *Reps. Comm.*, 3 F.4th at 370.  That is what the Agency has done here.

based on what was released more than twenty-five years ago and no less than fifteen years before the records at issue in this case were created because of the evolution of the Agency's standards, practices, and operations.

Notably, while Congress added a sunset provision for records covered by the deliberative process privilege in the FOIA Improvement Act of 2016, it did not do the corollary, which would have been to impose the sort of waiver of the privilege based on past disclosures of the same information that the Requesters' argument would create. The Court should enforce the statute as written. *See Argus Leader*, 139 S. Ct. at 2366. This is especially appropriate because courts review the adequacy of the agency's evidence in particular matters such that depriving agencies of the ability to make different support or proffer other reasons as agencies' experience and circumstances change in the substantive areas of their missions (immigration enforcement, airline safety, law enforcement, etc.) would inappropriately and unfairly stray beyond the role of the judiciary to decide particular cases or controversies. Notably, Requesters' here do not challenge in their opening brief the District Court's rejection of their policy or practice claim, so any such arguments are waived.

**D.** **None of the Other Material Appellants Identify Dispel the Reasonableness of Asylum Officers' Expectation that Their Analyses Will Not be Publicly Divulged Unless Specifically <u>Adopted into a Final Agency Action.</u>**

Appellants also point to a handful of other materials in their attempt to refute the notion that Asylum officers reasonably believe their preliminary deliberations will be maintained within the Agency and not publicly divulged. Appellants' Br. at 26-28. Nothing Appellants cite is persuasive.

First, Appellants again note that there have been instances in which whole assessments have been publicly released. *See* Appellants' Br. at 27. Appellants specifically point to a handful of assessments that, for one reason or another, have been released in full. Nearly all these examples come from the period between 1998 to 2005, when Appellants contend the Agency regularly released assessments in response to FOIA requests. *See* A54, A205, A366. Only two examples are more recent. A353, A366. But, these one-off examples hardly disprove the reasonable expectations of Asylum officials today, especially in light of this Court's decision in *Abtew* in 2015. One can reasonably believe that information will remain closely held despite rare occasions in the past when the same kind of material was released. The Agency's declarant did not claim that Assessments had *never* been released— only that, today, Asylum officials reasonably expect their preliminary opinions and recommendations will not be publicly divulged. *See* A310 ¶ 11.

Next, Appellants cite training material from 2004. *See* Appellants' Br. at 27 (citing R.18-5). Such outdated material is hardly useful in assessing the reasonable expectation of asylum officers today. According to Appellants, it was created nearly two decades ago, *see* Appellants' Br. at 33 (stating material was created in 2004), and at least thirteen years before any of the Assessments at issue in this case, *see* A37 ¶ 180; A39-A41 ¶¶ 192, 205, 210 (Assessments created between 2017 and 2019). But, even setting that aside, the cited slide does not suggest that assessments are routinely disclosed to the public or even widely disseminated within government. Rather, it suggests only a select few government officials beyond the Agency may access this information—just the Associate Chief Counsel for Immigration Customs and Enforcement, one bureau within the State Department, the Board of Immigration Appeals and Federal Courts, and Congress. *See* A227. Even among those limited groups, it does not specify in what circumstances access is provided or how often. *See id.* At bottom, this slide is not antithetical to, or even significantly probative of, the notion that low-level asylum officials reasonably expect their preliminary opinions to be closely held and not publicly disseminated in most cases.

Lastly, Appellants point to the Affirmative Asylum Procedures Manual. Appellants' Br. at 27-28. It states that an assessment "may be disclosed" to an applicant in response to a FOIA request. A233. This is true. As with just about

any class of government record, there is at least some possibility—however remote for sensitive information covered by a governmental privilege—of disclosure under FOIA. And, in fact, the Assessments in this case were partially disclosed to the Applicants in response to FOIA requests. But FOIA also permits the withholding of exempt material, and thus, the Agency was permitted to withhold the exempt information contained in those records. The fact that there is some possibility of disclosing a given record type by virtue of the FOIA, does not mean that agency officials—asylum officers or otherwise—should therefore reasonably expect that their candid preliminary opinions, recommendations, and deliberations that are contained in those records—which are exempt from disclosure under FOIA—will be routinely divulged to the public. Said another way, the existence of FOIA does not itself make the expectation that deliberative material will be closely held unreasonable. Were that the case, one would expect employees to alter their behavior and cast their opinions, analysis, and recommendations differently in ways that would perhaps result in more material being released under FOIA less than twenty-five years after its creation but not be unhelpful to the administrative functions of agencies carried out during that quarter century.

## III.  THE DISTRICT COURT PROPERLY RELIED UPON THE AGENCY'S DECLARATION.

In addition to their merits-based arguments, Appellants also argue that the district court's decision was flawed as a matter of procedure because, they contend,

it should not have relied upon the Agency's declaration at all.  Summary judgment may be granted to an agency in a FOIA case on based on affidavits submitted by agency personnel, "if the affidavits describe the documents and the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith."  *Mil. Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981).   Although Appellants lodge several objections to the Agency's declaration, they are unpersuasive alone or in combination, and the District Court correctly considered the Agency's declaration.

### A. The Agency's Declarant Was Competent to Provide Evidence on the Reasonably Foreseeable Harm Perceived by the Agency.

Appellants first procedural challenge is whether the Agency's declarant provided a sufficient basis upon which to testify on the issue of foreseeable harm at all.  Appellants' Br at 38-39; *see also id.* at 25-26.  The answer is affirmative.

Federal Rule of Civil Procedure 56(c)(4) generally requires that affidavits supporting or opposing a motion for summary judgment "be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated."  Fed. R. Civ. P. 56.  In FOIA cases, agency declarants may rely on information they obtain in the course of their official duties or from review of agency records when supporting the

agency's invocation of FOIA exemptions. *See, e.g.*, *Montgomery v. IRS*, 40 F.4th 702, 716 (D.C. Cir. 2022) ("FOIA declarants are not required to have personal knowledge of the search itself, but rather personal knowledge of the procedures used in handling [a FOIA] request and familiarity with the documents in question." (internal citation and quotation marks omitted)); *Londrigan v. FBI*, 670 F.2d 1164, 1174 (D.C. Cir. 1981) (explaining that an agent properly stated in his affidavit that "one of the sources whose identity was withheld by the FBI had specifically requested confidentiality" because that information was contained in a record the agent reviewed, even though the agent did not independently verify that the source had actually requested confidentiality). This includes information that may have been relayed to them by other agency employees. *See DiBacco v. Dep't of Army*, 926 F.3d 827, 833 (D.C. Cir. 2019) (holding that, "although some of the information [in agency's declaration] was relayed to [declarant] by her subordinates, declarations in FOIA cases may include such information without running afoul of Rule 56"); *Weisberg v. Dep't of Just.*, 705 F.2d 1344, 1358 (D.C. Cir. 1983) (approving of testimony because declarant "consulted with his colleagues who had personal knowledge" of the relevant aspects of the search);.

Here, the Agency's declarant explained that the statements in her declaration were "based on [her] personal knowledge, [her] review of relevant documents kept by USCIS in the course of ordinary business, and upon information provided to [her]

by other USCIS employees in the course of [her] official duties." A309 ¶ 4. This Court has previously credited declarations that were similarly based. For example, in *Machado Amadis*, 971 F.3d at 371, it was sufficient for the declarant to describe the foreseeable harm that would result from the release of withheld information (i.e., discouraging candor among agency officials) based on her "personal knowledge, as well as on information acquired by [her] in the course of performing [her] official duties." JA 262, 272 [Document #1799865], *Machado Amadis v. Dep't of State*, No. 19-5088 (D.C. Cir); *Machado Amadis*, 971 F.3d at 371 (finding declaration adequately established foreseeable harm). Nevertheless, even though Appellants concede that an "agency declaration may properly include hearsay," they assert that in this case the Agency's declarant here relied too heavily on hearsay and that she otherwise lacked the requisite personal knowledge. *See* Appellants' Br at 38-39; *see also id.* at 25-26. Not so.

First, the suggestion that the Agency's declarant is wholly without independent personal knowledge of the immigration subject area is mistaken. Before Ms. Munita became the Associate Center Director and Chief FOIA Officer, she spent the bulk of her career as an immigration officer. *See* A308 ¶ 1. She held various supervisory and non-supervisory roles, including having served as the Director for USCIS Field Office in Seattle for several years immediately prior to her current position. *See id*. Thus, she demonstrated an ample basis for personally

knowing how immigration officials conduct their business and articulating the Agency's perception of foreseeable harm in the Assessments' context.

Second, to the extent that Ms. Munita's declaration was also informed by information received from other Agency personnel, such reliance, as noted above, is permissible. *See e.g., DiBacco*, 926 F.3d at 833 ("declarations in FOIA cases may include [hearsay] without running afoul of Rule 56."); *Weisberg*, 705 F.2d at 1358 (approving of testimony because declarant "consulted with his colleagues who had personal knowledge" of the relevant aspects of the search). Appellants apparently do not doubt this to be true, *see* Appellants' Br. at 38, yet they insist that there is some magical line that the Agency's declaration crossed in this case; their objection lacks citation to any authority from this Court demonstrating that such reliance is impermissible and in contravention of *Machado Amadis*.

For example, Appellants' Brief (at 39) directs the Court to *Campbell v. Department of Justice*, 164 F.3d 20 (D.C. Cir. 1998), where the Court was considering whether an informant had been provided an express assurance of confidentiality for purposes of applying Exemption 7(D). *Id.* at 34–35. But, in *Campbell*, the Court held that the agency's declaration failed to establish this fact because "the [] declaration simply asserts that various sources received express assurances of confidentiality without providing *any basis* for the declarant's knowledge of this alleged fact." *Id.* (emphasis added). Thus, the Court did not

disregard that portion of the declaration because it relied on hearsay—but because there was no basis whatsoever—hearsay or otherwise—for the given assertion.

Appellants likewise place more weight on *Londrigan v. FBI*, 670 F.2d 1164 (D.C. Cir. 1981), than it can sustain.   There, this Court held that an FBI agent's testimony based on his review of agency records and knowledge of FBI investigative policies and practices could be considered in assessing an agency's withholdings under the Privacy Act.   *Id.* at 1174–75.   But there was some information— specifically, assumptions made by certain FBI interviewees—for which the Court's opinion reflects the agent could not "possibly" have known.   *Id.* at 1175.   Thus, again, it was not a case where this Court disapproved the reliance on hearsay or gained through other relevant experience working in other positions.   Indeed, by permitting an agent to testify based on his review of agency records, the Court endorsed such reliance.   Instead, the information that was excluded related again, only to information for which there was no "possibl[e]" basis for the assertion.[6]

---

[6]     In a similar vein, Appellants argue that the "[d]istrict [c]ourt [e]rred [b]y [c]onsidering [an] [u]nsubstantiated [f]ear [o]f [f]raud."   Appellants' Br. at 52-53. Appellants essentially argue that the Agency's declarant did not adequately spell out how she knew release of the information at issue would lead to fraud and further stifle internal agency deliberations. *See id.*   Of course, more could always be said, and the appropriate question is whether the agency said enough or should be given another opportunity to do so. *See Hall & Assocs. v. EPA*, 956 F.3d 621, 633 (D.C. Cir. 2020) (denying summary judgment for defendant does not mean judgment is automatically appropriate in favor of FOIA requester in a case addressing Exemption 5).   These arguments fail for all the same reasons as their other arguments on personal knowledge and hearsay.   But, furthermore, the district court expressly

Accordingly, Appellants' arguments for essentially striking or disregarding the Munita declaration should be rejected.

### B.    A Trivial Error in a Portion of One Sentence, Is Not Grounds to Wholly Disregard the Agency's Declaration.

Appellants also argue that the district court erred in crediting the Agency's declaration because part of one sentence contains a minor error.    *See* Appellants' Br. at 28-30.    Specifically, Appellants point to the portion of the Agency's declaration stating that "revealing the internal deliberations and analysis of USCIS asylum and supervisory asylum officer would provide bad actors with information that would allow them to tailor asylum applications and testimony in a favorable, but fraudulent, manner.   A312 ¶ 15.  They point out, however, that Assessments are drafted by the Asylum officer and do not contain the deliberations of the supervisory asylum officer—that is who receives the assessment and makes the final administrative decision in cases where asylum is granted, but not denied.   Although this error may be regrettable, it is not the kind of error that warrants wholesale disregard of the declaration.

Agency declarations are afforded a presumption of good faith, which is not rebutted merely by reference to "trivial matters, such as typographical errors and

---

noted that the Agency's "discussion of the need for candid evaluations . . . is enough to carry the agency's burden without any reference to fraud."  A389 (citing A311 ¶ 14).

minor ambiguities" in those documents.   *SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1200, 1202 (D.C. Cir. 1991).  For example, in *SafeCard Services*, this Court dismissed the purported "troubling inconsistencies" in the SEC's affidavits, including the "appearance that the SEC created two inconsistent *Vaughn* indices, one for the district court and one for the Appellant," which the agency explained. The Court concluded that "[t]his apparent mix-up and a small collection of other technical failings support neither the allegation that the SEC's search procedures were inadequate nor an inference that it acted in bad faith."

Here, much as in *SafeCard Services*, the error identified by Appellants— though unfortunate—is trivial.  Indeed, that very declaration elsewhere makes clear that the Assessments at issue were drafted only by the Asylum officers and presented to the supervisory official for a final decision.  *See* A309-A310 ¶¶ 9-11.  Paragraph 9, for example, states that "[t]he Assessments at issue here are documents that were prepared by the USCIS asylum officers who interviewed the four asylum-applicant Plaintiffs" and that they were "prepared by the asylum officers for their supervisors and document their candid impressions, opinions, and analyses of the evidence and explain the bases for their initial recommendations that the applications be denied and that the applicants be referred to immigration court for removal proceedings." A309-A310 ¶ 9.  The declaration goes on to explain that "[t]hese Assessments were reviewed by the asylum officers' supervisors, who in turn made the ultimate decision

on the asylum applications." A310 ¶ 10. That assessments contain only the deliberations of asylum officers is not controversial. It is a fact that has been recognized in multiple opinions from this Court, *see Gatore*, 2023 WL 2576176 at *1; *Abtew*, 808 F.3d 898, and is not disputed by Appellants.

It is also an error that does not alter the description of harm identified by the Agency. Paragraph 14 explains that disclosure of the deliberative material in the Assessments "would cause asylum officers to no longer feel free to discuss their evaluation of evidence or their analysis of the asylum eligibility criteria in an open and frank manner." A311 ¶ 14. Paragraph 15 of the declaration—which is the paragraph containing the unfortunate error—explains that "[k]nowing that [certain] details may be publicly revealed and used by potential bad actors would further stifle the free flow of information between asylum officers and their supervisors as this would provide further reason to be less forthcoming in their assessments and recommendations." A312 ¶ 15.

Appellants characterize the error as more than trivial by suggesting that, if the document contains deliberations by both the asylum official and his or her supervisor, it supposedly makes the claim that the material is deliberative "stronger." Appellants Br. at 30. This makes no sense. The invocation of the deliberative process privilege is not contingent upon the inclusion of deliberations from the deciding officials themselves. It is enough that the deliberations are part of the

overall give and take in the decisionmaking process. *See Sierra Club*, 141 S. Ct. at 785 ("[T]he deliberative process privilege shields from disclosure 'documents reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated[.]'" (quoting *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 150 (1975))).  Indeed, this Court has already concluded that the deliberations of asylum officials reflected in Assessments qualify for protection under Exemption 5.  *See Abtew*, 808 F.3d at 899 (holding assessment could be withheld under deliberative process privilege because (1) it "was pre-decisional," as "it was merely a recommendation to a supervisor" and (2) it "was also deliberative" because it was "written as part of the process by which the supervisor came to that final decision.").  *Abtew* controls.

And, as explained above, whatever nominal "strength" was supposedly added was certainly undermined by the fact that the declaration explicitly says the Assessments were created by the asylum officials and provided to their supervisors for an ultimate determination.  Further, even if such a fact added something to the deliberative process analysis—which it does not—the district court here did not rely on any notion that the Assessments contained input from supervisory asylum officials.  Indeed, it expressly disavowed any such suggestion.  *See* A390 ("only asylum officers write the Assessments").  Thus, this small error in one fragment of the declaration was acknowledged by all and it indisputably had no impact on the

outcome in this case—that is the definition of "trivial." *See* Merriam-Webster, *trivial* (*available at* https://www.merriam-webster.com/dictionary/trivial) ("trivial" means "of little worth or importance").

In short, the Agency's declaration was prepared and submitted in good faith, sworn, and signed by the declarant, and, while it regrettably does contain a trivial error, it is not the kind of error that warrants wholesale disregard of her sworn testimony. *See SafeCard Servs.*, 926 F.2d at 1202.

## IV.  APPELLANTS' POLICY ARGUMENTS ARE INAPPOSITE.

In a final attempt to find error in the district court's ruling, Appellants abandon FOIA's framework altogether and, instead, present pure public policy arguments that they insist support disclosure of the information here.   Specifically, Appellants argue that the information sought should have been disclosed because "the public has the right to know" if asylum officers are using reliable sources and whether they are otherwise following their instructions and because Assessments are, in some cases, used in Immigration Court   *See* Appellants' Br. at 46-47, 50-51.  But these sorts of policy-based arguments—whatever their force—have no place in the proper adjudication of an agency's assertion of FOIA exemptions.  These arguments would better be addressed to Congress, which is the body responsible for weighing the costs and benefits of mandatory disclosures for covered Executive agencies and deciding at what level of generality to write the statute.

Congress struck the balance between disclosure and non-disclosure under the FOIA. "FOIA expressly recognizes that 'important interests [are] served by [its] exemptions,' . . . , and '[t]hose exemptions are as much a part of [FOIA's] purpose[s and policies] as the [statute's disclosure] requirement." *See Argus Leader Media*, 139 S. Ct. at 2366. The text of the FOIA must therefore be faithfully applied, regardless of policy arguments such as the ones advanced by Appellants. *See id.* (refusing to adopt an atextual requirement as a "matter of policy" because "just as we cannot properly expand Exemption 4 beyond what its terms permit, . . . we cannot arbitrarily constrict it either by adding limitations found nowhere in its terms"). In short, when an agency sufficiently establishes the basis for its assertion of a FOIA exemption, that is the end of the inquiry—the proponent of disclosure is not free to "bolster the case for disclosure by claiming an additional public benefit." *Pub. Citizen Health Rsch. Grp. v. FDA*, 185 F.3d 898, 904 (D.C. Cir. 1999).

## <u>CONCLUSION</u>

For the foregoing reasons, the Agency respectfully requests that this Court affirm the judgment below.

MATTHEW M. GRAVES
United States Attorney

BRIAN P. HUDAK
JANE M. LYONS
Assistant United States Attorneys


*/s/ Derek S. Hammond*
DEREK S. HAMMOND
Assistant United States Attorney
601 D Street, N.W. – Civil Division
Washington, D.C. 20530
(202) 252-2511

*Attorneys for the United States of America*

### CERTIFICATE OF COMPLIANCE
**(Fed. R. App. P. 32(g))**

The text for this Brief for Appellee is prepared using Times New Roman, 14 point and—except for those items described in Fed. R. App. P. 32(f) and Circuit Rule 32(e)(1)—contains 10,474 words as counted by Microsoft Word.

*/s/ Derek S. Hammond*
DEREK S. HAMMOND
Assistant United States Attorney

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 28th day of March 2023, the foregoing Brief for Appellee was served on appellants' counsel through the Court's ECF system.

*/s/ Derek S. Hammond*
DEREK S. HAMMOND
Assistant United States Attorney